[No. 12414.   In Bank. — May 8, 1889.]

THE PEOPLE, UPON COMPLAINT OF EL DORADO COUNTY, RESPONDENT, v. THOMAS DAVIDSON, APPELLANT.

TOLL-ROAD — PUBLIC HIGHWAY — DEDICATION. — A legalized toll-road or turnpike is a public highway, and the act of constructing and opening such a road for use, followed by public user on payment of tolls, constitutes a dedication of it as a public highway. No formal acceptance by the public is required; it is enough that the public used the road for the purpose of travel.

ID. — EXPIRATION OF TOLL-ROAD FRANCHISE — FREE HIGHWAY. — Under section 2619 of the Political Code, upon the expiration of a toll-road franchise the toll-road becomes a free public highway, and no compensation is required to be paid to the toll-road owner. The owner, by construction of the road, with knowledge of the law, turned it over to the use of the public, and can claim no compensation other than such as was given by tolls during the existence of the franchise.

ID. — REPEAL OF FRANCHISE — COMPLAINT BY COUNTY — INJUNCTION. — When a toll-road franchise, granted by the El Dorado County board of auditors in 1878, is subsequently repealed by the board of supervisors of the county in 1886, the franchise expires by limitation; and the county may commence an action as complainant in the name of the people of the state, upon relation of the attorney-general, to have the road adjudged a public highway, and to enjoin the one claiming to be the owner of the road from demanding or taking toll from travelers thereon, or from interfering with or obstructing travel over the same by the public.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Blanchard & Swisler*, and *A. P. Catlin*, for Appellant.

*Attorney-General Johnson, M. P. Bennett, S. C. Denson*, and *C. F. Irwin*, for Respondent.

BELCHER, C. C.—This action was brought by the attorney-general, on complaint of El Dorado County, to have a road, claimed by defendant, adjudged to be a public highway, and to enjoin the defendant from demanding or taking tolls from travelers thereon, or in any

manner interfering with or obstructing travel over the same by the public.

The case was tried by the court, and the findings and judgment were in favor of plaintiff. The defendant moved for a new trial, and his motion being denied, appealed from the judgment and order.

The material facts of the case are as follows: In 1861 the defendant constructed, in El Dorado County, a road about one and a half miles long, upon land of which he then had possession, and of which he subsequently acquired the title in fee. He constructed and has ever since maintained this road wholly at his own expense, for the purpose of using it as a toll-road. And after its construction, up to the time of commencing this action, the road was continuously used for public travel by foot-passengers and passengers with animals and vehicles, without interference by defendant, except that he always claimed the right to demand and receive, and did demand and receive, tolls for the privilege of passing over it. In 1864 defendant became the owner of, and thereafter resided in, a house standing by the side of the road, on the front side of which the words "toll-house" were painted. Near the house he erected a sign on which there was an inscription headed "rates of toll," and followed by a schedule of charges. That sign was kept up until July 8, 1878, and until that time defendant demanded and received from persons passing over the road tolls according to the rates shown on the sign. On the 8th of July, 1878, defendant made application to have the board of auditors of El Dorado County fix the rates of toll on his road, and thereupon the board made an order, which reads as follows: "Now comes Thomas Davidson and asks the board that the rates of toll for his toll-road, commencing at the Old Mountain House and running to Buckeye Flat, being about one and one half miles in length, be fixed; whereupon the board fixes his rates of toll as follows," etc.

After the making of this order defendant demanded and collected tolls from all persons passing over his road in accordance with the rates so fixed. No other order in reference to this road was made until the second day of February, 1886, when the board of supervisors of the county passed an order rescinding the aforesaid order of the board of auditors.

For more than twenty-five years the road has been assessed to the defendant, and he has annually paid all state and county taxes levied thereon.

Upon these facts two questions arise: 1. Did the defendant dedicate his road to a public use? and 2. When his franchise expired and he ceased to have a right to collect tolls on it, did it become a free public highway?

1. Since the adoption of the codes, individuals have had the same right to construct and operate toll-roads as corporations. (Civ. Code, sec. 523.) That defendant constructed his road for the use of the public is clear from his own statements. He testified: "The road was built by me for the purpose of accommodating travel and taking toll for such accommodation, — that is, for the travel of the road. It was called 'toll' and the road we called a 'toll-road.' I allowed everybody to travel who would pay me toll; I never refused to allow travelers to travel on the road who would pay me toll."

It is not necessary to inquire what was the *status* of the road, or what right defendant had to collect tolls thereon prior to July, 1878, when he obtained the order from the board of auditors fixing his rates, but after he obtained that order he undoubtedly did have the right to demand and receive tolls from all persons passing over the road. This right was a franchise, and made the road a legalized toll-road or turnpike. Such roads are public highways. They are constructed, like other public highways, for the convenience of the public, in the hope of profit to their proprietors, it is true, yet for a public purpose; and travelers have a right to use them

on paying the specified toll.   The law upon this sub-
ject is declared by the supreme court of Massachusetts as
follows:—

"We think a turnpike road is a public highway, es-
tablished by public authority for public use, and is to be
regarded as a public easement, and not as private prop-
erty.   The only difference between this and a common
highway is, that, instead of being made at the public
expense in the first instance, it is authorized and laid
out by the public authority, and is made at the expense
of individuals in the first instance; and the cost of
construction and maintenance is reimbursed by a toll
levied by public authority for this purpose.   Every
traveler has the same right to use it, paying the toll es-
tablished by law, as he would have to use any other
public highway." (*Commonwealth* v. *Wilkinson*, 16 Pick.
175; 26 Am. Dec. 654.)

Now, whether the road was dedicated by defendant to
the use of the public was a question of fact to be deter-
mined by the trial court in view of all the evidence.
The defendant testified: "It has never been my inten-
tion to dedicate it to the public as a highway, unless they
indemnify me.   I never did dedicate it to the public,
unless permitting persons to travel over it by paying me
a compensation was a dedication."   Speaking of a plank
road, the supreme court of Illinois has said: "By the
act of constructing it and opening it for use, and being
used on payment of tolls, it was as emphatically dedi-
cated to the public as it could have been by deed or
dedication acknowledged and recorded.   The elements
of a complete dedication are found in the permitted use
of the road by the public, and building it for such pur-
pose, and the subsequent use of it by the public without
denial or interruption." (*Craig* v. *People*, 47 Ill. 487.)

This language is as applicable to toll-roads as plank
roads, and we think it is a correct statement of the law.

It is claimed that the evidence must not only show a

dedication or abandonment of the road, but also an acceptance of it by the public as a public highway. But no formal acceptance was necessary; it was enough that the public used the road for the purpose of travel. The finding, therefore, that there was a dedication was authorized, and must be sustained.

2. Section 2619 of the Political Code provides that: " Whenever the franchise for any toll-bridge, trail, turnpike, plank or common wagon-road has expired by limitation or non-user, such bridge, trail, turnpike, plank or common wagon-road becomes a free public highway, and no claim shall be valid against the public for right of way, or for the land or material comprising such bridge, trail, turnpike, plank or common wagon-road."

As we have seen, the defendant had a franchise, and was authorized to. collect tolls on his road until February, 1886, when the board of supervisors made the order rescinding the order of the board of auditors. Then his franchise "expired by limitation," and his road became a free public highway.

It is claimed for appellant that before his road can be declared a free public highway he must be paid an equitable sum for his interest in it. But by his own acts, and presumably with full knowledge of the law, appellant turned over to the public the use of his land for a road, and vested in the public an irrevocable easement. It is not a case, therefore, where private property is sought to be taken for public use without just compensation. In some of the states, compensation is made to toll-road owners upon the expiration of their franchises, but in those states it is expressly provided by law that such compensation shall be made. In this state there is no such provision, and section 2619 of the Political Code expressly declares to the contrary. We think that section conclusive upon this question.

3. The action was properly brought on complaint of the county, the complaint stated a cause of action, and

the findings were justified by the evidence.   We advise therefore that the judgment and order be affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

PATERSON, J., did not participate in the decision of the above cause.