[No. 14623.   Department One. — June 18, 1892.]

HARVEY S. BLOOD, APPELLANT, *v.* GEORGE WOODS, RESPONDENT.

TOLL-ROAD — EXPIRATION OF FRANCHISE— PUBLIC HIGHWAY. — A franchise for a toll-road granted by the legislature for the period of twenty years expires by limitation at the end of the twenty years, and the road then becomes a public highway.

ID. — POSSESSION OF TOLL-ROAD — COLLECTION OF TOLLS — PRESUMPTION. — A person in the possession of a road claimed by him to be a toll-road, authorized by the legislature to be continued for twenty years, who has collected tolls thereon for over twenty years since the passage of the act, and who shows no other franchise therefor, will be presumed to have claimed the right to tolls under the original grant, and to have collected them lawfully during the existence of the franchise, although there is no direct evidence that the persons named in the act, or their assigns, constructed the road, or that he was an assignee of such persons, or collected tolls under that franchise.

ID. — DEDICATION OF PUBLIC ROAD — CONDITION AS TO TOLLS. — The act of constructing and opening a toll-road for use, followed by public user thereof, constitutes a dedication of it as a public road. The fact that tolls are demanded, and that the public uses the road only upon condition of paying tolls, does not affect the question of dedication.

ID. — AUTHORITY OF SUPERVISORS — FREE PUBLIC ROAD — TOLLS — FRAN-
CHISE. — The board of supervisors of a county has no authority to grant
a franchise to collect tolls upon a free public road.

ID. — LEGISLATIVE ACT — EXCESS OF AUTHORITY — LIMITS OF PROCEDURE. —
The granting of a franchise for a toll-road by the board of supervisors of
a county is a legislative act, and the board, in granting it, cannot exceed
the authority vested in them, or transcend the limits of the procedure
required of them.

ID. — JUDICIAL INQUIRY AS TO CHARACTER OF ROAD — COLLATERAL ATTACK
UPON AUTHORITY OF SUPERVISORS. — The granting, by the board of su-
pervisors of a county, of a franchise to collect tolls, does not preclude
inquiry by the courts as to whether the road was a toll-road or a free
public highway, and their conclusion upon that fact may be questioned
collaterally.

ID. — RECORD OF PUBLIC ROAD — DEDICATION. — It is not necessary that the
board of supervisors of a county should cause a road to be recorded as
such, to render a strip of land dedicated to the public as a public road a
legal public highway.

APPEAL from a judgment of the Superior Court of
Calaveras County.

The facts are stated in the opinion.

*Reddick & Solinsky*, for Appellant.

The right and privilege to collect tolls is a franchise.
(*Truckee etc. Road Co.* v. *Campbell*, 44 Cal. 89.   See also
*People* v. *Davidson*, 79 Cal. 166; *Volcano Cañon Road Co.*
v. *Supervisors*, 88 Cal. 634.)   The authorities are unani-
mous on the proposition that the existence of a fran-
chise cannot be questioned in a collateral proceeding.
(*Truckee etc. Road Co.* v. *Campbell*, 44 Cal. 89.   See also
*Weaverville etc. Road Co.* v. *Supervisors*, 64 Cal. 69; *Vol-
cano Cañon Road Co.* v. *Supervisors*, 88 Cal. 634; *Stony
Hill etc. Road Co.* v. *Supervisors*, 88 Cal. 632.)   The
method of attacking the validity of a franchise is laid
down in section 803, Code of Civil Procedure, and is the
course that should have been adopted to test the legal-
ity of plaintiff's franchise.   It is the rule that is applied
to corporations, when the question of the validity of
the incorporation is called in question.   (*Bakersfield
Town Hall Ass'n* v. *Chester*, 55 Cal. 98; *Stockton etc.
Gravel Co.* v. *Stockton etc. R. R. Co.*, 45 Cal. 680; *Rondell*
v. *Fay*, 32 Cal. 354; *Oroville R. R. Co.* v. *Supervisors*,

37 Cal. 354; *Pacific Bank* v. *De Ro*, 37 Cal. 538.) It is the rule that is applied to questions involving the right to hold office. (*Hull* v. *Superior Court*, 63 Cal. 174; *Buckner* v. *Veuve*, 63 Cal. 304; *People* v. *Toal*, 85 Cal. 338.) The supreme court of this state has repeatedly recognized the fact that the management and control of public roads rests with the boards of supervisors of the various counties of the state. (*Kimball* v. *Supervisors*, 46 Cal. 23; *Waugh* v. *Chauncey*, 13 Cal. 11; *Fall* v. *Paine*, 23 Cal. 302; *Sherman* v. *Buick*, 32 Cal. 250; 91 Am. Dec. 576; *People* v. *Duncan*, 41 Cal. 507; *People* v. *Davidson*, 79 Cal. 166; *People* v. *O'Keefe*, 79 Cal. 171.) The supreme court has further recognized that boards of supervisors have jurisdiction and power to grant franchises to collect tolls on roads. (See *People* v. *Davidson*, 79 Cal. 166; *People* v. *Duncan*, 41 Cal. 507; *Bartram* v. *Central Turnpike Co.*, 25 Cal. 283.) The board of supervisors of Calaveras County had the power and jurisdiction to grant the franchises to plaintiff, and therefore its orders made in this respect cannot be collaterally attacked, any more than the judgments of courts of record. (*Waugh* v. *Chauncey*, 13 Cal. 11; *Fall* v. *Paine*, 23 Cal. 302; *Thomas* v. *Armstrong*, 7 Cal. 287.) The toll-road in question is not a free public highway, as it was not so declared by the board of supervisors. (Pol. Code, sec. 2643, subd. 2; *Welsh* v. *County of Plumas*, 80 Cal. 338.)

*W. C. Green*, for Respondent.

The facts in this case show that the road was dedicated to the public without question, for even legalized toll-roads or turnpikes are public highways. (*People* v. *Davidson*, 79 Cal. 168.) It was enough that the public used the road for the purpose of travel. The finding, therefore, that there was a dedication, was authorized, and must be sustained. (See also *People* v. *O'Keefe*, 79 Cal. 172; *Bolger* v. *Foss*, 2 West Coast Rep. 898; Washburn on Easements, 139, 140.) The contention of counsel for the plaintiff, to the effect that it was compulsory for the board of supervisors to record all public high-

ways before they become free public highways, does not
need further answer than to simply say, that while it is
the duty of the supervisors to record such highways, they
are none the less free public highways if they do not do
so. (*People* v. *Davidson*, 79 Cal. 166; Pol. Code, sec.
2619.) The board of supervisors are a municipal body,
having no powers except those expressly granted by the
sovereign authority, or which are necessary to the exer-
cise of the powers granted in terms. There is no act of
the legislature of this state which invests the board of
supervisors with authority to convert a public highway
into a toll-road, and to grant to an individual the right
to collect tolls of persons traveling the highway. (*El
Dorado County* v. *Davison*, 30 Cal. 523.) A board of
supervisors is an inferior tribunal of limited and special
jurisdiction, and in the exercise of its judicial powers,
its authority must affirmatively appear, and nothing can
be presumed in its favor. Plaintiff does not consider
the difference between a void and a voidable judgment.
The board of supervisors acted judiciously when it at-
tempted to grant the franchise to plaintiff. The act was
therefore in the nature of a judgment; but its act was
absolutely void, and hence could be collaterally attacked.
(See *Whitwell* v. *Barbier*, 7 Cal. 54; *McMinn* v. *Whelan*,
27 Cal. 300; *Forbes* v. *Hyde*, 31 Cal. 342; *Hahn* v. *Kelly*,
34 Cal. 391; 94 Am. Dec. 742; *People* v. *Harrison*, 84 Cal.
608.)

Temple, C. — Appeal from a judgment taken within
sixty days after its rendition.

The action is to recover tolls claimed to be due from
defendant for passing over plaintiff's alleged toll-road.
The validity of the franchise is questioned.

An act of the legislature of this state, passed April 8,
1863, granted to certain persons named, to be incorpo-
rated as "Silver Mountain Turnpike Company," a fran-
chise to construct and maintain a toll-road from a point
in Calaveras County to a point then in Mono County,
now Alpine, — the franchise to continue for twenty years,

—tolls to be fixed by the supervisors of the county of Calaveras.

The record contains no direct evidence that the persons named, or their assigns, or the corporation, ever constructed the road under this act. The plaintiff, however, testified: "I have been on this road twenty-seven years. It has been a toll-road for the use of the public ever since that time. It has been a toll-road ever since 1862. This is the same road referred to in the act of the legislature of this state of April 8, 1883. People have traveled over this road both in Calaveras County and in Alpine County ever since then by paying tolls."

The road was known as the Big Tree and Carson toll-road, and the court finds from the above evidence that it is the road referred to in the act of the legislature.

On the seventh day of April, 1887, the board of supervisors of the county of Calaveras passed the following ordinance:—

"ORDINANCE No. 20.

"The board of supervisors of the county of Calaveras do ordain as follows: 1. H. S. Blood is hereby granted the right, privilege, and franchise to collect tolls at a rate to be fixed by this board on that portion of the 'Big Tree and Carson Valley toll-road,' situated and being in this county, to wit: Beginning at the Big Trees, and extending easterly to the boundary line on said road between Calaveras and Alpine counties, for the period of ten years after the twenty-third day of April, 1887."

Rates of toll were fixed, and plaintiff proceeded to collect tolls at Bear Valley station, which was in Alpine County. No toll-gate had been authorized by the board in Calaveras County.

May 7, 1890, the board of supervisors passed the following order: —

"Petition of H. S. Blood, owner of the franchise to collect tolls on the so-called Big Tree and Carson Valley toll-road, received and filed, petitioning this board to establish and fix a toll-gate and place to collect tolls at

Gardner's or Cold Spring ranch, about two and a half miles from the Big Trees in Calaveras County, also petitioning this board to fix the rate of toll to be collected on this road for the ensuing year. On motion it was unanimously ordered that a toll-gate and place to collect tolls on said road be and the same is hereby established at Gardner's house, on the said Cold Spring ranch, about two and a half miles from Big Trees, in Calaveras County, and the said H. S. Blood is hereby authorized and empowered to collect tolls on said road at said Gardner's house."

The court found that the road in question was a free public road, and that the ordinance granting the franchise to plaintiff, and the order authorizing a toll-gate at Gardner's, were void.

The appellant claims, — 1. That the evidence does not show that the road was a free public road, but, on the contrary, that it was a private toll-road, belonging to him; 2. If it were a free public road, still the ordinance and order are valid; and 3. The ordinance is conclusive, and the court cannot go behind it to inquire whether the requisite facts to authorize the board to grant the franchise existed or not.

If the appellant can be regarded, under the evidence, as the successor of the beneficiaries of the act of the legislature, the answer to the first proposition is easy. By limitation the franchise expired in twenty years, and the road became a free public highway. (Pol. Code, sec. 2619.)

This provision of the code, and the *status* of the road after the expiration of the franchise, was fully considered in *People* v. *Davidson,* 79 Cal. 166.

But the appellant contends that it was not shown that the persons or the company named in the act, or their assigns, ever constructed the road authorized by that act, or that he was the assignee of such persons, or ever collected toll under that franchise.

He testifies that the road is the road authorized by

that act. That ever since the passage of that act, the public has been using the road, paying tolls for so doing, and that he has been there collecting tolls for twenty-seven years. In other words, he has been in possession, claiming to own this franchise, and has enjoyed the benefit of it. Although the record is silent on that point, we must conclude that he has had the rates of toll fixed by the board, and toll-gates authorized. We cannot presume that he has demanded and received, for all these years, tolls as a wrong-doer. In fact, in his evidence and in his specifications, he claims that the road was a toll-road. It could only be made so by a grant of a franchise from some source. Such a grant is shown, and as there is no claim that there was any other, we must conclude that the appellant claimed the right to collect tolls under that franchise. He certainly enjoyed the benefit of it, and cannot now escape the conditions of the franchise under the claim that his title was bad, and all his acts.illegal and wrongful.

But the same consequence would follow, if he could escape the conditions of the grant of the franchise by showing that his title was bad. In *People* v. *Davidson*, 79 Cal. 166, it was held that the fact that tolls are demanded, and that the public uses the road only upon condition of paying tolls, does not affect the question of dedication. There is the offer of the land to the public, and an acceptance of the offer. That portion of the road which was in Calaveras County, up to 1890, had not only been used as a public road, but as a free public road, by all who did not travel as far as Bear Valley in Alpine County. The defendant and his neighbors had had the free use of it. If plaintiff had no franchise; there was nothing to connect it with his road in Alpine County. It was a road thrown open to the public, and accepted and used by it. These acts would constitute a dedication.

This brings us to the question, conceding that it had become a free public road, Could the board grant to plaintiff a franchise to collect tolls thereon?

To establish his position, appellant points out that prior to the passage of the County Government Act, subdivision 4 of section 4046 of the Political Code, authorized boards of supervisors to lay out and control public roads, turnpikes, etc., and in subdivision 17 of section 4046, to grant licenses and franchises as provided by law for constructing, keeping, and taking tolls on roads, etc.

These provisions were re-enacted in the County Government Act in 1883. This act was amended in 1889. (Stats. 1889, p. 233.) Subdivision 4 of section 25 of this act reads: —

" Sec. 25. The boards of supervisors in their respective counties have jurisdiction and power, under such limitations and restrictions as are prescribed by law, — . . . . 4. To lay out, maintain, control, erect, and manage public roads, turnpikes, ferries, and bridges, within the county, and to grant franchises and licenses to collect tolls thereon."

These general statements, grouping and to some extent defining the power of the board, cannot be held to place the board above the procedure elsewhere prescribed, which often very materially limits the jurisdiction and power apparently conferred by this general language, and in the amendment to the county government act, above quoted, the power is expressly limited and restricted.

Turning now to the provisions as to toll-roads, we find, commencing with section 2779 of the Political Code, a chapter with reference to toll-roads. Article 1 is entitled: " Construction of toll-roads." And the first section in the chapter prescribes a procedure where the company requires the use of the power of eminent domain.

It will be seen that the board must appoint commissioners to lay out the road, and that they control the location.

Section 2789, in this chapter, prescribes what shall be done where the company has no occasion to condemn lands. Then follow many provisions in regard to con-

struction and management, erection of bridges, toll-gates, etc. To a large extent these roads are placed under the control of the board of supervisors.

In the Civil Code, commencing with section 512, are provisions defining, even more minutely, what shall be done to establish toll-roads.

Toll-roads are public roads, as much so as free public highways, and the statute relied upon by appellant confers the power to manage and control them upon boards of supervisors, as public roads.

The public roads, therefore, upon which the board may regulate the collection of tolls, are the roads so constructed, and the mode in which the board must exercise the power to grant such franchises is prescribed by the statutes and procedure alluded to.

Appellant relies for authority upon *People* v. *Davidson,* 79 Cal. 166. There was no such question before the court in that case. It was not claimed that the road, before the granting of the franchise, was a public highway. The only questions discussed, as stated by the court itself, were, whether the use by the public of the road upon condition of paying tolls amounted to a dedication, and whether, when the franchise defendant claimed had expired, the road became a free public road. So far as these two questions are concerned, I have based this decision largely upon that case. Nothing further was there decided.

That the board of supervisors has no authority to grant a franchise to collect tolls upon a free public highway was expressly held in *El Dorado County* v. *Davison,* 30 Cal. 521.

Does the fact that the board has attempted to grant a franchise to collect tolls imply that the board has decided that the road is not a free public highway, but is a toll-road within the meaning of this opinion? and if so, is that conclusion one that can be questioned collaterally?

The granting of a franchise is a legislative act. It is the use of delegated power, and the board cannot exceed

its authority. No case has been cited, and I know of none, in which the right to inquire whether the power has been used upon a subject-matter not within the grant of power has been questioned, in whatever form it becomes material. In cases where the right to exercise the power depends upon the existence of some fact which the board may or may not be authorized to determine, the board, as to such preliminary matter, acts in a capacity somewhat different. Whether courts can go behind such a conclusion has been and perhaps is a vexed question. But it is not involved here. No such authority is given the board, and the point is, that the act is not within the authority delegated to the board, and could not be done under any circumstances.

The act of accepting a road as one constructed under the authority of the code, and of fixing tolls, is to some extent a judicial act. But I see nothing in this which can preclude inquiry. To give these acts that effect would enable the board to do an act wholly outside of its authority, and then by a subsequent assertion place it beyond question. Certainly this cannot be done. The cases cited by appellant have no bearing upon the question.

It is not necessary that the board of supervisors should cause a road to be recorded as such, to render a strip of land dedicated to the public as a public road a legal public highway.

I think the judgment should be affirmed.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.