[Sac. No. 391.   In Bank.—November 18, 1898.]

## THE PEOPLE ex rel. ROBERT WAUGH, Respondent, v. AUBURN AND YANKEE JIM'S TURNPIKE COMPANY, Appellant.

TOLL-ROAD COMPANY—EXTENSION OF FRANCHISE UNDER CODE—RIGHT TO COLLECT TOLLS.—A toll-road company incorporated under the act of 1853, for a period of twenty years, which, during the life of its franchise, elected to continue its existence under sections 287 and 402 of the Civil Code for the term of fifty years, though thereby losing its right to determine its own tolls, yet has the right, for the extended period, to collect such tolls as may be fixed by the board of supervisors.

APPEAL from a judgment of the Superior Court of Placer County.   J. E. Prewett, Judge.

The facts are stated in the opinion of Commissioner Haynes, adopted by the Court.

F. P. Tuttle, for Appellant.

W. F. Fitzgerald, Attorney General, L. L. Chamberlain, and Tuttle & Wright, for Respondent.

THE COURT.—When this cause was in Department the following opinion was prepared by Mr. Commissioner Haynes;

upon further consideration of said cause in Bank we are satisfied with the views therein expressed; and for the reasons therein given the judgment is reversed, with directions to the court below to dismiss the action:

HAYNES, C.—The defendant was incorporated in 1853 under an act approved May 12th of that year, entitled "An act to authorize the formation of corporations for the construction of plank or turnpike roads" (Stats. 1853, p. 169), for the purpose of constructing and operating a turnpike toll road between Auburn and Yankee Jim's.

The corporation fixed the term of its existence at twenty years, which was the longest period permitted by the statute, and constructed the road within the time fixed by law, and thereafter and until the month of May, 1873, continued to exist and to take tolls on said road, under the said act, and at the date last mentioned, which was less than twenty years from the date of its organization, it elected to continue its existence as a corporation under the provisions of sections 287 and 402 of the Civil Code for the term of fifty years, and continued to take tolls as before until April 10, 1896, when the board of supervisors, on the application of the defendant, fixed the rates of toll to be charged on said road, by adopting the rate fixed on that and other roads the year before; and the defendant still and now claims the right and franchise to take tolls thereon by virtue of its original organization and its continued existence under the provisions of the Civil Code. This action was commenced in June, 1896, the prayer of the complaint being for a decree adjudging that the defendant has no warrant or authority to collect tolls on said road and that it be perpetually enjoined therefrom. The plaintiff had judgment and the defendant appeals.

The facts were stipulated, and stand as the findings, and the foregoing statement is condensed therefrom.

Respondent concedes that the defendant is now, and ever since 1853 has been, a corporation; but contends that the franchise to exist as a corporation, and the franchise to collect tolls, are separate and distinct; that the latter franchise is simply a right granted by the board of supervisors under the law, and then states the question thus: "Did the mere existence of the

corporation, which happened to be called a turnpike company, confer upon the board the duty and right to give it the further franchise?"

It must be true that by the terms of the act of 1853, under which the defendant became incorporated, the existence of the corporation, as well as its right to take tolls, was limited to twenty years; and if that act had continued in force the question before us would be easily determined.

It is conceded, however, that before the expiration of the term of its existence the codes were adopted, and under the provisions of the Civil Code the term of its existence was not only extended, but its existence was continued "under the provisions of this code which are applicable thereto, and shall possess all the rights and powers, and be subject to all the obligations, restrictions, and limitations prescribed thereby." (Civ. Code, sec. 287.)

So far as I am informed, there has never been any question that, as to a corporation electing to continue its existence under the provisions of the code applicable to it, the former laws under which it was formed and existed, and which were applicable to it, were expressly repealed by section 288 of the Civil Code; and if it be true, as conceded by respondent, that the term of defendant's existence has been extended by its compliance with the code provisions, at least that part of the act of 1853 which limited the term of its existence to twenty years has been repealed. But the act of 1853 did not limit the time within which the franchise of taking tolls should be exercised otherwise than by the term of its existence as a corporation, and hence, to support respondent's contention, the same provision of the statute which was repealed as to the existence of the corporation remained in force, and is now invoked as a living statute under which the death sentence of the franchise to take tolls is pronounced. To illustrate: Suppose the codes had not been enacted, and the legislature had amended section 5 of the act of 1853, to the effect that the term of existence of all corporations formed under it should be extended to fifty years, and had left section 18 unchanged, could anyone doubt that the right to take tolls given by that section would continue during the extended term?

Though not destroyed by defendant's election to continue its existence under the code, its right to take tolls was not left un-

affected. By section 18 of the act of 1853 the defendant had full power to regulate tolls and toll gates on their road; but by section 514 of the Civil Code wagon-road corporations are permitted to take such tolls only as are fixed by the board of supervisors.

The act of 1853 made no provision as to the disposition of the road at the expiration of the franchise, or upon the dissolution of the corporation, while the Political Code, section 2619, provides: "Whenever the franchise for any toll-bridge, trail, turnpike, plank, or common wagon road has expired by limitation or nonuser, such bridge, trail, turnpike, plank, or common wagon road becomes a free public highway."

Section 2799 of the Political Code provides that the corporation may abandon the whole or any part of their road by a written surrender, acknowledged and recorded, and section 2800 of the Political Code provides for the purchase of toll roads by the county "at any time after any toll road constructed, and under operation under any of the laws of this state, has been in existence for ten years or more . . . . at a fair cash valuation, to be fixed by seven commissioners," et cetera.

It is further urged by respondent that under the act of April 22, 1853 (Stats. 1853, p. 114), the corporation was allowed to collect revenue enough to recoup itself for the cost of the road, repairs, and running expenses, and, in addition, twenty per cent on the investment, after which time its income was to be reduced.

It is not clear that said act applies to any corporation organized under the act of May 12, 1853.

The act of April 22d was brief and imperfect, and, while not referred to in the repealing clause of the later act, appears to have been repealed by it. The former act is entitled, "An act to provide for the incorporation of wagon-road companies."

The first section provided that the provisions of chapter IV of an act concerning corporations, passed in 1850, "wherein the same does not conflict with the provisions of the following sections of this act, shall apply to the incorporation of companies formed for the purpose of constructing common wagon roads." It was, therefore, in effect, an amendment of chapter IV of the act of 1850, and that chapter was expressly repealed by the act

of May 12th, which also repealed "all other laws and acts inconsistent herewith."

It is also argued that it could not have been the intention of the legislature that by the continuance of the existence of corporations under section 287 of the Civil Code, the valuable rights and privileges would be continued which would have otherwise ended under the provisions of the original charter.

But the power of the legislature to extend the existence of these privileges, upon the extension of the corporate existence, cannot be questioned; while there would seem to be little reason for continuing the latter, if all its former rights and privileges were to be lost by its acceptance of the offer of continued corporate existence.   Indeed, the simple and inexpensive process of organizing a corporation, thus creating a franchise to exist as such, shows conclusively that if that was the sole purpose of section 287 it was almost, if not quite, useless; and, therefore, its principal purpose must have been to continue corporate existence in order that corporate property, rights, and privileges might be preserved and enjoyed by complying with the provisions of section 401 or of section 402 of the Civil Code.   (The latter of these sections authorized corporations to continue their existence for an additional period of fifty years, and was repealed March 30, 1874.)

It is further argued that these code provisions were intended to apply to the numerous corporations doing business of a private nature, and not to quasi public corporations.

Whether any reason existed which would have justified such a distinction, need not be considered.   It is plain no ground for such distinction appears in either of the sections of the codes above considered, while section 403 of the Civil Code declares that: "The provisions of this title [title 1] are applicable to every corporation, unless such corporation is excepted from its operation, or unless a special provision is made in relation thereto inconsistent with the provisions of this title, in which case the special provision prevails."

It is, of course, conceded that a "toll road" is a public highway, and that when the right to take tolls ceases it becomes a free public highway, and the board of supervisors has no authority to grant a franchise to collect tolls upon such a highway.

(*El Dorado County v. Davison*, 30 Cal. 521; *Blood v. Woods*, 95 Cal. 78, 86.)

Respondent cites several cases, none of which affect the conclusions I have reached. In *People v. Anderson etc. Road Co.*, 76 Cal. 190, defendants were granted a franchise by the board of supervisors under a special act of the legislature, which limited the term of franchises to be granted to fifteen years. Held, that tolls could not be collected after the expiration of that time.

*People v. Davidson*, 79 Cal. 166, was entirely similar. There the road was constructed by a private individual in 1861 (upon what authority does not appear), and who kept it as a toll road. In 1878 the board of auditors of El Dorado county, on the owner's application, made an order fixing rates of toll, which order was repealed by the board of supervisors in 1886. On these facts two questions were considered: "1. Did the defendant dedicate his road to a public use? 2. When his franchise expired and he ceased to have a right to collect tolls on it, did it become a free public highway?"

In *McMullin v. Leitch*, 83 Cal. 239, the defendants were incorporated under the act of 1853, but it was not renewed under the provisions of the Civil Code, and it was held that its right to collect tolls expired at the termination of the franchise, and that the stockholders were not entitled to compensation upon the road being declared a free public highway.

Appellant cites *People v. Pfister*, 57 Cal. 532, a case directly in point. The defendant was incorporated as a turnpike company in 1857, and elected to continue its existence under the code, and complied with its provisions in that behalf. In the opinion it was said: "The denial of the right of the corporation to collect tolls is based in the complaint exclusively upon the ground that no such corporation exists. If it exists, it has a right to collect such tolls as the board of supervisors may authorize it to collect."

Ross, J., dissented, contending that the extension of the existence of the corporation did not carry with it the right to collect tolls beyond the period of twenty years from its original organization.

The learned counsel for respondent, commenting on that case, say that "the sole contention of the plaintiff was that no such

corporation existed." The complaint in that case stated that among the franchises exercised by defendants was the following: "To own and possess a certain highway, and to collect tolls thereon" (see reporter's statement). The public would not be likely to complain that the corporation kept the road in repair at its own expense, and it would, therefore, seem somewhat probable that the exercise of the franchise aimed at was that of taking tolls, and, therefore, the pith and marrow of the decision was the conclusion that, as the corporation existed, it had the right to take tolls.

As it is stipulated that the agreed statement contains "all the facts concerning said action," the judgment should be reversed, with directions to dismiss the action.

HENSHAW, J., dissenting.—I dissent. The only new rights obtained by the corporation were: 1. To continue its corporate existence to the full term of fifty years; 2. To exercise its corporate franchise under the prescriptions and regulations of the code. An analysis of *People v. Pfister*, 57 Cal. 532, will disclose that the sole objection there presented to the defendant's right to collect tolls was based upon the contention that it had ceased to be a corporation. That proposition having been resolved in the defendant's favor, the right to collect tolls was not decided, but conceded.

Beatty, C. J., and Temple, J., concurred in the dissenting opinion.