[Sac. No. 1912.   In Bank.—January 20, 1913.]

ANGELLA GARDELLA, Respondent, v. COUNTY OF AMADOR (a Municipal Corporation), and COUNTY OF CALAVERAS (a Municipal Corporation), Appellants.

TOLL-BRIDGE—EXPIRATION OF LIFE OF FRANCHISE TO COLLECT TOLLS—BRIDGE BECOMES FREE PUBLIC HIGHWAY.—Upon the expiration of the twenty-year period limited by the act of March, 1862 (Stats. 1862, p. 76), authorizing the construction of a bridge across the Mokelumne River at Big Bend, situated partly in Calaveras County and partly in Amador County, and granting the right to collect tolls thereon for twenty years, the right to collect tolls ceased by limitation, and the bridge so constructed became a free public highway. This result would have followed even in the absence of any statute to that effect.

ID.—DEDICATION OF TOLL-ROAD OR BRIDGE TO PUBLIC USE—TERMINATION OF RIGHT TO TAKE TOLLS.—The construction of a road upon the grant of a franchise to collect tolls is a dedication of the road to public use, subject only to the right to collect tolls. The road

belongs to the public, and the only interest of the holder of the franchise is the right to collect tolls as a compensation for building the road, and there is no right to compensation when the right to take tolls has ceased by expiration of the term for which it was granted or by abandonment. The same rules apply to bridges, which are highways under section 2618 of the Political Code.

ID.—BRIDGES SITUATED IN TWO COUNTIES.—Section 2619 of the Political Code, providing that "whenever the franchise for any toll-bridge . . . has expired by limitation or nonuser, such bridge . . . becomes a free public highway," is not limited in its application to bridges or roads wholly within a single county.          .

ID.—CERTIORARI—ANNULLING ORDER OF SUPERVISORS DECLARING BRIDGE A PUBLIC BRIDGE.—A judgment in *certiorari* proceedings annulling, for want of jurisdiction to make it, an order of the board of supervisors declaring such bridge to be a free public bridge, which order had been passed after the expiration of the period limited for the collection of tolls, was not an adjudication that the bridge had not become a free public highway upon the expiration of that period.

ID.—FRANCHISE TO COLLECT TOLLS ON PUBLIC HIGHWAY—LIMITATION ON POWER OF SUPERVISORS—BRIDGE ACROSS WATERS SEPARATING TWO COUNTIES.—A board of supervisors has no power to grant a franchise to collect tolls on a bridge constituting a free public highway, except in the case authorized by subdivision 33 of section 4041 of the Political Code, when in their judgment the expense necessary to operate or maintain it as such is too great to justify the county in so operating or maintaining it. That subdivision, however, is limited to the case of bridges situated entirely in a single county, and has no application to the case of bridges across waters separating two counties.

ID.—CONSTRUCTION OF NEW TOLL-BRIDGE—STATUTORY REQUIREMENTS MUST BE FOLLOWED.—The board of supervisors of the county situated on the left bank of a river dividing two counties has no power, under section 2843 of the Political Code, to grant the right to construct a new toll-bridge across such river, except upon compliance with the various requirements made necessary by sections 2870 and 2872 of that code.

ID.—GENERAL POWERS OF SUPERVISORS—CONSTRUCTION OF NEW TOLL-BRIDGE—COLLECTING TOLLS ON EXISTING PUBLIC HIGHWAY.—The boards of supervisors of the counties bordering upon such river, are not authorized, under their general powers, to enter into a contract for the construction of a new toll-bridge, for with respect to that subject the legislature, by sections 2843 et seq. of the Political Code, has made specific provisions limiting both the extent of the power and the mode of its exercise; nor can the power to grant a franchise to collect tolls upon an existing public and open bridge be

implied from any general expression in the code defining their powers, because, in the absence of statute expressly granting it, they have no power to authorize the taking of tolls upon a public high-way.

ID.—ESTOPPEL AS AGAINST PUBLIC—INVALID FRANCHISE FOR TOLL-BRIDGE. The doctrine of estoppel cannot be applied so as to validate, as against the public, grants of franchises to collect tolls upon a bridge constituting a public highway, made by boards of super-visors in excess of the powers conferred upon them.

APPEAL from a judgment of the Superior Court of Calaveras County.   A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

Wm. G. Snyder, District Attorney of Amador County, and Will A. Dower, for Appellants.

F. J. Solinsky, and Paul C. Morf, for Respondent.

SLOSS, J.—The defendants appeal from a judgment in favor of plaintiff.

The action was brought to quiet plaintiff's title to a bridge called "The Big Bar Bridge" crossing the Mokelumne River, and to quiet title to a portion of the road leading to the bridge at either end. At Big Bar, where the bridge crosses, the thread of the Mokelumne River forms the boundary between Amador and Calaveras counties. The latter county is on the left bank of the river. The plaintiff claims under two ordinances passed by the supervisors of Calaveras and Amador counties, on the fourth and fifth days of April, 1898, respectively, purporting to grant to her a franchise permitting her, for the period of thirty years, to collect tolls from the public traveling upon said roads and over said bridge. The counties defendant assert, on the other hand, that the bridge, with its approaches, is a free public highway, and that the alleged franchises to collect tolls are void.

In March, 1862, the legislature passed an act (Stats. 1862, p. 76) granting to Louis Soher and his associates the right to construct a bridge at Big Bar, with a road crossing said bridge from Mokelumne Hill in Calaveras County to Butte in Amador County, and to collect thereon for twenty years such tolls as might annually be fixed by the board of super-

visors of Calaveras County. The bridge was constructed and
tolls collected by Soher & Co. until in October, 1885, the super-
visors of Calaveras County passed an order declaring the
bridge to be a free public bridge, and the road leading thereto
in said county a free public highway. In February, 1886,
Soher & Co. filed a petition in the superior court of Calaveras
County for a writ of *certiorari* to review such order, and the
proceeding resulted in a judgment declaring the action of the
board to be in excess of its jurisdiction, and annulling the
order complained of. No appeal was ever taken from this
judgment.

In July, 1886, the board of supervisors of Calaveras County
granted to Soher & Co. a license to collect tolls on the bridge
until the first Monday in October of the same year. There-
after the rights of Soher & Co., whatever they were, became
vested by transfers in Joseph Gardella, who died in 1891.
The plaintiff and her four children succeeded to his interest.

After October, 1886, no license was granted, but the super-
visors continued from year to year to fix the tolls to be col-
lected by the successors of Soher & Co.

In April, 1898, the plaintiff filed with the board of super-
visors of Calaveras County a petition praying for a franchise
to collect tolls on the Big Bar Bridge for thirty years. The
petition averred that it was necessary to repair the bridge
and replace a large portion thereof with a combination iron
bridge; that the expense of reconstruction would be about
four thousand dollars. The petitioner alleged her willingness
to reconstruct the bridge and to keep it in repair during the
term of such franchise. A similar petition was presented to
the supervisors of Amador County. The orders granting the
franchises were adopted, as already stated, on the fourth
and fifth days of April, 1898. In neither case did the order
of the board, or its records, contain, by way of recital, or
otherwise, a finding or declaration that in the judgment of
the board "the expense necessary to operate or maintain" the
bridge was "too great to justify the county in so operating
or maintaining" it. (Pol. Code, sec. 4041, subd. 33.) The
court, however, admitted, over the objection of the defendants,
parol testimony tending to show that the respective boards
did make a determination of this fact.

Thereafter, Mrs. Gardella repaired and reconstructed the bridge and its approaches, expending thereon some eight thousand dollars, and she has ever since, until the present controversy arose, made all necessary repairs, and has collected tolls at the rates fixed, from time to time, by the supervisors of Calaveras County.

In this state of facts, the bridge unquestionably was, when the orders of the fourth and fifth days of April, 1898, were made, a free public highway, and not, as declared in one of the conclusions of law, a toll-bridge, with respect to which the plaintiff was the owner of a valid franchise. By the act of 1862, under which the bridge was originally constructed, the right to collect tolls was granted for the period of twenty years. Upon the expiration of that period, the right ceased by limitation. (Pol. Code, sec. 2619; *People* v. *Anderson etc. Co.,* 76 Cal. 190, [18 Pac. 308] ; *People* v. *Davidson,* 79 Cal. 166, [20 Pac. 538] ; *Blood* v. *Woods,* 95 Cal. 78, 86, [30 Pac. 129] ; *People* v. *Auburn etc. Turnpike Co.,* 122 Cal. 335, [55 Pac. 10].) The construction of the road upon the grant of a franchise to collect tolls is a dedication of the road to public use, subject only to the right to collect tolls. (*Blood* v. *Woods,* 95 Cal. 78, [30 Pac. 129].) The road belongs to the public, and the only interest of the holder of the franchise is the right to collect tolls as a compensation for building the road. (*Wood* v. *Truckee Turnpike Co.,* 24 Cal. 475; *Kellett* v. *Clayton,* 99 Cal. 210, [33 Pac. 885].) There is no right to compensation when the right to take tolls has ceased by expiration of the term for which it was granted or by abandonment. (*McMullin* v. *Leitch,* 83 Cal. 239, [23 Pac. 294].) The same rule applies to bridges (*Sears* v. *Tuolumne County,* 132 Cal. 167, [64 Pac. 270]), which are highways under the definition of the statute. (Pol. Code, sec. 2618.)

It is argued that section 2619 of the Political Code, providing that ''whenever the franchise for any toll-bridge, trail, turnpike, plank, or common wagon-road has expired by limitation or nonuser, such bridge . . . becomes a free public highway,'' applies only to bridges or roads wholly within a single county. The section was relied upon in *Blood* v. *Woods,* 95 Cal. 78, [30 Pac. 129], where the road in question extended from one county into another. But, if we were to disregard the code section, the result would be the same. In the ab-

sence of any statute, a toll-road, upon the expiration of the time for which the franchise to take tolls was granted, would become a free public highway. (*People* v. *Davidson,* 79 Cal. 166 [21 Pac. 538].)

It is claimed, however, that the judgment in the *certiorari* proceeding brought by Soher & Co. in 1886 was an adjudication that the bridge was not a free public highway, and that this adjudication, whether erroneous or not, has become final and conclusive. We think the judgment had no such effect. "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." (Code Civ. Proc., sec. 1911; *Fulton* v. *Hanlow,* 20 Cal. 456; *Chapman* v. *Hughes,* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982].) All that was adjudged in the judgment in *certiorari* was that the board of supervisors had no jurisdiction to make an order declaring the bridge to be a free public highway. The want of such jurisdiction may have rested on any one of a variety of grounds. Certainly the ownership by Soher & Co. of a franchise to collect tolls was not a necessary part of the adjudication.

If, then, the bridge in question was, on the fourth and fifth days of April, 1898, a free public highway, there was no power, unless by virtue of subdivision 33 of section 4041 of the Political Code, to grant a franchise to take tolls thereon. This subdivision is, in effect, a re-enactment of a provision which appeared for the first time in subdivision 41 of section 25 of the "Act to establish a uniform system of county and township governments, approved March 24, 1893. (Stats. 1893, pp. 346, 359.) Prior to the enactment of this statute, no franchise to collect tolls upon a public highway could be granted at all. (*El Dorado County* v. *Davison,* 30 Cal. 520.) As was said in the case last cited, where the board of supervisors had undertaken to grant such a franchise to the defendant: "A toll-gate erected upon a highway which belongs to the state or the people thereof is a nuisance, and might be abated as such. The grant to the defendant was to do an illegal act."

Since 1893, however, boards of supervisors have had power to grant franchises for taking tolls on public highways, "when

in their judgment the expense necessary to operate or maintain such public roads or highways as free public highways is too great to justify the county in so operating or maintaining them.'' (*Blood* v. *McCarty,* 112 Cal. 561, [44 Pac. 1025].) In the present action the court made a finding to the effect that the board of supervisors of each of the counties of Calaveras and Amador did, before granting the franchises of April fourth and fifth, 1898, make a determination that the expense of maintaining and operating the bridge was too great to justify the respective counties in so maintaining and operating it. This finding is attacked by appellants, their position being that the determination in question, which is prerequisite to the validity of the order (*Bedell* v. *Scott,* 126 Cal. 675, [59 Pac. 210]), must appear affirmatively upon the record of the board, and, if not so appearing, cannot be proven otherwise. The records of the respective boards do not, as already stated, show such determination. While the point thus urged finds some support in the case last cited, the weight of authority seems to be to the effect that parol evidence is admissible to show that a court or board of limited power has acted within its juridiction, in the absence of a statute requiring such facts to appear in the minutes or other record of its proceedings. (*Jolley* v. *Foltz,* 34 Cal. 321; *Reclamation Dist.* v. *Goldman,* 65 Cal. 638, [4 Pac. 676]; *In re Williams,* 102 Cal. 70, 77, [41 Am. St. Rep. 163, 36 Pac. 407]; Freeman on Judgments, 4th ed., sec. 523; Black on Judgments, sec. 282.) But it is unnecessary to decide this question here. The respondent herself suggests, and we think correctly, that subdivision 33 of section 4041 has no application to the case of a bridge across waters separating two counties. In *Croley* v. *California Pac. R. R. Co.,* 134 Cal. 557, [66 Pac. 860], the court held that subdivision 4 of section 25 of the County Government Act (Stats. 1891, p. 300), giving the supervisors power to erect bridges, but providing that when the cost of erection of any bridge exceeds the sum of five hundred dollars, the board must advertise for bids, etc., had no bearing upon the authority of the board to contract for the construction of a bridge crossing a stream which separated two counties. It was pointed out that as the authority of the board was limited to the construction of bridges ''within the county,'' the construction of a bridge, only one-half of which

would be in the county, was not included in the grant of power or controlled by the limitations upon such grant. "It is also evident," says the court, "that neither county would have the right to construct a bridge beyond its own boundary line and there is no provision in the subdivision for any concert of action between the boards of two counties or for harmonizing any difference between them, if such should exist." The reasoning applies with equal force to the case before us. By the introductory words of section 4041, the supervisors are vested with enumerated powers "in their respective counties." A bridge across a river dividing two counties is an entirety. In the nature of things it calls for unity of control. This is illustrated by the code sections authorizing the construction of toll-bridges over waters dividing two counties (Pol. Code, secs. 2843 et seq.). By these provisions the grant of the right to construct, the fixing of license-taxes and tolls, and all details of regulation, are placed in the jurisdiction of the supervisors of the county on the left bank of the stream or other water. That no similar provision is found in the general enactment (Pol. Code, sec. 4041, subd. 33) authorizing the grant of a right to take tolls upon a public highway is persuasive evidence that the subdivision was not designed to include the case of a bridge over waters dividing two counties. It was certainly never contemplated that the board of supervisors of the county in which one-half of such bridge was located should have authority to grant a franchise to take tolls over such half, while the remainder of the bridge might be free and open. Here, as in the case of the construction of a new bridge (the case considered in *Croley* v. *California Pac. R. R. Co.*, 134 Cal. 557, [66 Pac. 860]), there is no provision for concerted action between the two counties. The reasonable interpretation of subdivision 33 of section 4041 is that the section, if it covers the case of a bridge at all, has reference only to bridges situated entirely within the limits of a county.

The respondent urges, however, that the transaction of April, 1898, may be viewed in another aspect. The claim is that what was offered by plaintiff in her petition, and subsequently carried out by her, was, in effect, the construction of a new bridge in return for the grant of a right to take tolls thereon. As has already been suggested, authority to so con-

struct a toll-bridge may be granted by the board of supervisors of the county situated on the left bank of the river (Pol. Code, sec. 2843). But such grant may be made only upon compliance with various requirements, such as the publication of a notice of the intended application (Pol. Code, sec. 2870). The applicant must also cause a certified copy of the order granting the application, with the application, to be recorded in the office of the county clerk before "proceeding under it." (Pol. Code, sec. 2872.) It is not claimed that there was any compliance with these provisions, and the grant to plaintiff cannot, therefore, be sustained under the power conferred upon the board of supervisors by the sections just cited.

There is no force in the contention that the proceedings constituted a contract, which the respective boards of supervisors were authorized to make with plaintiff under their general powers. In *Croley v. California Pac. R. R. Co.*, 134 Cal. 557, [66 Pac. 860], it was held that section 2713 of the Political Code gave to the supervisors of the counties bordering upon streams plenary powers in the matter of the construction of bridges crossing such streams, to such extent as to permit the county to agree to pay to a railroad corporation constructing such bridge a given sum in return for the furnishing, on the bridge, of a separate roadway for teams and pedestrians. The decision is based upon the ground that there is no legislation limiting the power of the board in the matter "nor upon the extent or mode in which it is to be exercised." But, obviously, this reasoning has no application to the grant of a franchise to construct a toll-bridge, for with respect to this subject the legislature has made specific provision, limiting both the extent of the power, and the mode of its exercise. (Pol. Code, secs. 2843 et seq.) On the other hand, if this be regarded, not as the construction of a new bridge, but as the grant of a franchise to take tolls upon an existing public and open bridge, the power to grant such franchise cannot be implied from any general expression in the statute defining the powers of boards of supervisors (*Blood* v. *Woods*, 95 Cal. 78, [30 Pac. 129]), since, as we have seen, there is, in the absence of statute expressly granting it, no power to authorize the taking of tolls upon a public

highway. (*El Dorado County* v. *Davison,* 30 Cal. 520, *Blood* v. *Woods,* 95 Cal. 78, [30 Pac. 129].)

Finally, it is argued that the counties, having received the benefits of plaintiff's expenditures, are estopped to deny the validity of the franchise forming the consideration of such expenditures. But the doctrine of estoppel cannot, we think, be applied so as to validate, as against the public, grants in excess of the limited powers conferred upon the public agents who assumed to make them. If there be any estoppel in cases of this character, its effect must be limited to permitting the plaintiff to retain what she has received (*Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 217, [59 Pac. 568, 825]), or to recover the reasonable value of what she has conferred upon the defendants in reliance upon their action. To grant further relief, such as that sought in this action, would obliterate the distinction between powers conferred upon public officers or boards and those expressly withheld from them. The mere assumption of a power would, if acted upon to his cost by a third person, be equivalent to the exercise of a power actually possessed.

The judgment is reversed.

Angellotti, J., Shaw, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.