[Civ. No. 6545. Fourth Dist. May 23, 1961.]

RAY MANN, Appellant, v. CITY OF BAKERSFIELD, Respondent.

Conron, Heard & James and Calvin H. Conron, Jr., for Appellant.

Kenneth W. Hoagland, City Attorney, for Respondent.

COUGHLIN, J.—The primary issue on this appeal concerns the nature of the right of a railway company to use a city street for spur track purposes, and the interest of an adjoining property owner served thereby pursuant to a track agreement with that company.

In June 1925, the city council of the chartered city of Bakersfield, which is the defendant and respondent herein, by motion granted a franchise to the Santa Fe Railway Company to "construct, operate and maintain a spur track" in an alley running through Blocks 329 to 334 inclusive of that city. The period of time during which this franchise might be used was not expressed. The alley in question is an east-west public street; bisects the blocks in question; and is intersected by alphabetically designated north-south streets which separate these blocks. Among the latter is "N" Street which separates Blocks 329 and 330. Three years later, i.e., in October 1928, the city council, by ordinance, granted a franchise to the railway company to "lay, maintain and operate" a switch track across "N" Street, from east to west, connecting the spur track with the premises located on the northwest corner of the intersection of the alley and "N" Street. These premises are a part of Block 329; are the site of a warehouse; in 1946 were the subject of a track agreement between their owner and the railway company, whereby an extension of the switch track was laid alongside the warehouse; and now are owned by the plaintiff Mann, who is the appellant herein. The plaintiff also is the owner of his predecessor's interest in the track agreement.

The charter of the city of Bakersfield declares that the rights of the city in and to its streets and other public property, except as otherwise provided therein, are inalienable; authorizes the council to grant a franchise, permit or privilege for the construction, maintenance and operation of railroads along any street or other public place in the city; provides that no person, firm or corporation shall ever exercise any franchise, permit or privilege unless a grant therefor shall have been obtained in accord with the provisions thereof; and also provides that no franchise shall be granted for a longer period than 25 years. (Stats. 1915, pp. 1552, 1576—§ 114, p. 1577—§§ 115, 116, p. 1581—§ 131.)

The spur track franchise of June 1925, never was renewed. The switch track franchise was renewed on February 8, 1954.

Some time later the city undertook the construction of an auditorium; proposed the use of Blocks 330 and 331 for this

purpose; commenced eminent domain proceedings to acquire this property; and filed an action against the railway company to cause removal of the spur track from the alley on the ground that the franchise theretofore granted had expired. Thereupon, under date of December 10, 1959, the plaintiff brought this action against the city to enjoin removal of the spur track until he had been compensated for the damage which he would sustain thereby, alleging that he was ''entitled to an easement across said tracks for the service to his warehouse of freight in freight carload lots; that said easement and right . . . is commensurate with the right of the Santa Fe Railway Company to maintain and operate said spur track.'' The 1946 track agreement provided for termination upon six months' written notice, and also in the event the railway company had and exercised the right to cease operating or abandon the spur track. On December 30, 1959, which was after the plaintiff had filed his complaint herein, the railway company gave written notice of termination of the track agreement and thereafter applied to the Public Utilities Commission for permission to abandon service upon and remove both the spur track and the switch track.

After the instant case was tried and submitted, the plaintiff moved for permission to file a supplemental complaint alleging that the spur track across Blocks 330 and 331 had been removed by the railway company on July 5, 1960; that his easement thus was destroyed; that this action was taken at the instance and demand of the city; that such destruction caused him damage in the sum of $50,000; and that he had filed a claim for damages with the city setting forth these facts. In substance, by his supplemental complaint the plaintiff purported to allege an inverse condemnation cause of action. It appears that the Public Utilities Commission, by order dated May 31, 1960, authorized the railway company to discontinue service over and remove both the spur track and the switch track, and that such removal was effected on July 5, 1960. Plaintiff's motion to file this supplemental complaint was denied. Thereafter, the court entered judgment in favor of the defendant city. Subsequently the plaintiff simultaneously moved for a new trial and for an order permitting him to file the foregoing supplemental complaint. Both motions were denied. The plaintiff appeals from the judgment and from the order made after judgment denying his motion to file a supplemental complaint.

The trial court found that the plaintiff had no interest in the spur track and this finding, if correct, is conclusive against him whether he relies upon an action for injunction or upon an action for damages under a claim of inverse condemnation.

As alleged in his complaint, the plaintiff's claimed easement was commensurate with the railway company's right to maintain the spur track. This right was based upon a franchise which had expired and, therefore, was nonexistent.

 The authority of the council of a chartered city to grant a franchise to lay and maintain railroad tracks upon its streets is measured by the charter (*City of San Diego* v. *Southern Calif. Tel. Co.*, 92 Cal.App.2d 793 [208 P.2d 27]; *City of San Diego* v. *Kerckhoff*, 49 Cal.App. 473, 477-480 [193 P. 801]; *cf. Blood* v. *Woods*, 95 Cal. 78, 87 [30 P. 129]); the extent of such a grant is limited to that which is within the power of the city to make (*Gardella* v. *County of Amador*, 164 Cal. 555, 560 [129 P. 993]; *City of Los Angeles* v. *Southern Pac. R. R. Co.*, 157 Cal. 363, 367 [108 P. 65]; *cf. City of Oakland* v. *Williams*, 15 Cal.2d 542, 550 [103 P.2d 168]; *City of Niles* v. *Michigan Gas & Elec. Co.*, 273 Mich. 255 [262 N.W. 900, 904]); pertinent provisions of the charter become a part of the grant (*Town of Pocahontas* v. *Central Power & Light Co.*, 152 Ark. 276 [244 S.W. 712, 717]; *City of Columbus* v. *Public Utilities Commission*, 103 Ohio St. 79 [133 N.E. 800, 813]); and when no term is designated by the granting authority, the franchise expires when the maximum term for which it might have been given expires. (*Gardella* v. *County of Amador, supra,* 164 Cal. 555, 559; *People* v. *Anderson & Ukiah Valley Road Co.,* 76 Cal. 190 [18 P. 308]; *City of San Diego* v. *Southern Calif. Tel. Co., supra,* 92 Cal.App.2d 793, 807; *City of Niles* v. *Michigan Gas & Elec. Co., supra,* 273 Mich. 255 [262 N.W. 900, 904]; *Boyce* v. *City of Gastonia,* 227 N.C. 139 [41 S.E.2d 355, 358].) Upon expiration of such a franchise the city may require the railroad to remove its tracks, and may enjoin its continued use of the streets as a public nuisance. (*Vanderhurst* v. *Tholcke,* 113 Cal. 147 [45 P. 266, 35 L.R.A. 267]; *City of San Diego* v. *Southern Calif. Tel. Co., supra,* 92 Cal.App.2d 793, 807; *Hill* v. *City of Oxnard,* 46 Cal.App. 624, 627 [189 P. 825].)

 The plaintiff contends that the right conferred upon the railway company in the instant case was an easement and not a franchise; constituted the "permit or privilege" re-

ferred to in the charter (Stats. 1915, p. 1577—§ 116, p. 1581—
§ 131); and, therefore, is not subject to the term limitation
imposed thereby, which he claims applies only to a franchise
and not to a permit or privilege. (Stats. 1915, p. 1577—§ 115.)
A franchise has been defined as ''a special *privilege* conferred
upon a corporation or individual by a government duly
empowered legally to grant it'' (*City of Oakland* v. *Hogan*,
41 Cal.App.2d 333, 346 [106 P.2d 987]) (emphasis added),
and as including the grant by a sovereign of an easement over
the streets not common to the public at large. (*City & County
of San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493,
529.) However, it is not necessary that we determine the
meaning of the term ''franchise'' as used in that section of
the charter which prohibits the granting thereof for a longer
period than 25 years, because the motion which conferred
upon the railway company the right to use the alley in ques-
tion expressly referred to and described this right as a
''franchise.'' ▪ A public grant is to be construed in
favor of the public interest. (*Southern Calif. Gas Co.* v. *City
of Los Angeles*, 50 Cal.2d 713, 719-720 [329 P.2d 289].)
▪ On appeal it will be assumed that the trial court found
the existence of every fact in support of its judgment which
results by necessary implication from the facts expressly
found. (*Albonico* v. *Madera Irr. Dist.*, 53 Cal.2d 735, 741
[350 P.2d 95]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226
P.2d 593]; *Pry Corp. of America* v. *Leach*, 177 Cal.App.2d
632, 636 [2 Cal.Rptr. 425].) ▪ Implicit in the findings
herein is the determination that the grant in question con-
stituted a franchise; was subject to the term limitation pre-
scribed by the charter; and ceased to exist upon the expiration
of 25 years. The plaintiff's contention to the contrary is with-
out merit.

▪ The plaintiff claims that the switch track franchise
renewal constituted also a renewal of the spur track franchise.
This contention is without factual foundation. The petition
asking for this renewal by reference incorporated an attached
map which specifically outlined only the switch track as the
one for which a franchise request was being made; the metes
and bounds description of this track, as set forth in the ordi-
nance granting the franchise, describes only the switch track;
and that ordinance purports only to grant a franchise upon
and across ''N'' Street. The reference in this ordinance to

"appurtenances" to the track in "N" Street was not meant to and did not include the spur track in the alley through Blocks 330 and 331.

By its express terms the track agreement terminated "forthwith in the event the Railway Company shall have and exercise the right or duty to cease operating or abandon that portion of the line of railroad with which [the switch track] is connected," and in addition, was terminable upon either party thereto "giving to the other six months' written notice of its desire to terminate the same." The company was given the right to cease operation of the spur track when its petition for permission to do so was granted by the Public Utilities Commission on May 31, 1960. Previously, i.e., on December 29, 1959, it had given plaintiff written notice of its intention to terminate the agreement as of June 30, 1960. Consequently, at the time the plaintiff first moved the court for permission to file his supplemental complaint which, according to the allegations therein, followed removal of the spur track, and before judgment was entered herein, the track agreement had come to an end.

The physical properties of the spur track or the right to maintain them in the alley were of no value to the plaintiff unless he could require the railway company to furnish him service through their use. He was entitled to these services only so long as the track agreement existed, but, by virtue of its express provisions, that agreement terminated before the spur track was removed. The company was given the right to cease operation of the spur track by the May 31st order of the Public Utilities Commission; the track agreement thereupon terminated; additionally the company had given notice of termination effective as of June 30th; if the agreement had not been terminated prior to this date it definitely then came to an end; and the reason which might have motivated the company to exercise its right to terminate, under the circumstances of this case, is of no consequence. The only right which the plaintiff may have had to use the alley in question for railroad transportation was dependent upon the existence of his track agreement, and when that agreement terminated his right ceased to exist. All of these facts were known to the trial court at the time it passed upon plaintiff's motion for permission to file his supplemental complaint and for this reason alone its denial of these motions was proper.

Other contentions urged in the briefs need not be considered

as the foregoing conclusions sustain the judgment and order under review.

The judgment and order are affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied June 19, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1961.