[Sac. No. 714.    Department Two. — March 11, 1901.]

## J. F. SEARS, Appellant, v. TUOLUMNE COUNTY, Respondent.

TOLL-BRIDGE — PUBLIC HIGHWAY — COMPENSATION — ABSENCE OF PROPERTY RIGHT. — A toll-bridge, like a toll-road, is dedicated by the builder for the use of the public, and becomes a public highway, the cost of the building and maintenance of which is reimbursed or compensated by the tolls levied by public authority; and upon expiration of the term of the franchise, or upon abandonment of its use, the public has the free use thereof; and the builder, or his grantee, has no private property in the bridge, or any part thereof, for which he is entitled to compensation.

ID. — FAILURE TO REBUILD BURNED BRIDGE — ABANDONMENT OF FRANCHISE. — The failure to rebuild a toll-bridge, burned during the term of the franchise, for a period of more than six years, or to manifest any intention to rebuild the same during that period, or at the time when the county began to rebuild it as part of a free public highway, shows an abandonment of the franchise.

ID. — SALE OF PIERS AND ABUTMENTS — RIGHT OF COUNTY. — The sale of the piers and abutments left by the burned bridge, to a private person, passed no title thereto; and the county had the right, after the abandonment of the franchise, to rebuild the bridge upon the same piers and abutments, as part of a free public highway, without compensation to the builder or the purchaser thereof, though the original term of the toll franchise had not yet expired.

APPEAL from a judgment of the Superior Court of Tuolumne County.   G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. P. O'Brien, for Appellant.

F. P. Otis, for Respondent.

THE COURT.— Action for the value of certain bridge piers and abutments, alleged to have been taken from plaintiff by defendant and used in the construction of a new bridge thereon. Defendant had judgment on motion for nonsuit, from which plaintiff appeals.

On March 9, 1879, the board of supervisors of Tuolumne County authorized one Starbird, one Smith, and plaintiff to maintain a toll-bridge for the period of twenty years at a point on Tuolumne River, known as Ward's Ferry, and fixed the annual license at forty dollars.   On March 19, 1887, Starbird's interest in the right and franchise was sold at sheriff's sale, under a judgment of court, to Smith and Sears.   By mesne conveyances, Smith's interest was conveyed to plaintiff, December 20, 1890, and at the commencement of the action he owned whatever right remained in the bridge.   The consent of the supervisors to these transfers was not asked nor given.   No consent was given to the grantees of Starbird to collect toll on the bridge.   They made no report to the board of the cost of erecting or equipping the bridge, or repairs made thereon during any year, or the amount of tolls collected, or the cash value of the bridge, or the annual cost of conducting the same, and never filed any bond.   The public had the unrestricted use of the bridge on payment of tolls.   On February 1, 1891, the bridge was burned, leaving only the piers and abutments in question, and was never rebuilt by plaintiff.   On July 24, 1897, the board, on proper petition, appointed viewers to lay out as a public highway a certain road, between the termini of which, and as a part of the proposed highway, was the site of plaintiff's bridge.   The viewers made no estimate for damages by reason of using the said piers, nor did the board award any damages therefor, nor declare the bridge a highway.   The only mention in the viewers' report of the bridge is in the column of " Remarks," stating that they " have interviewed Mr. Sears, who claims a right of way to certain abutments where the old

Ward's Ferry bridge formerly stood, and claims fifteen hundred dollars damages for the use of those abutments, but claims a roadway of fifty feet on the approach on each side, which we believe to have been built by private subscription, and not his property.   We believe the said abutments proper to be worth about three hundred dollars."   Plaintiff paid the taxes assessed against the bridge after 1891.   The land at the bridge crossing belonged to the general government.   It is admitted by defendant that the new bridge was built in November, 1897, on the piers and abutments, as alleged in the complaint, and that no condemnation proceedings were commenced to condemn the old bridge, or any part thereof, or any of the materials used in its construction.   Plaintiff duly presented his claim to the board, which was rejected, and on September 10, 1898, the action was brought.

Appellant claims that his property was taken without due process of law, and the county is liable therefor in damages. The grounds of the motion for nonsuit were: that plaintiff had no property right in the piers or abutments; that plaintiff has never received a franchise, nor any assignment of a franchise, from his associates; that he has lost any right he may have had, by not rebuilding the bridge; that the franchise has expired by limitation, and plaintiff has no right whatever.

The statutory provisions under which the bridge was constructed are found in the Political Code, sections 2843 et seq. The franchise was applied for under these provisions.   The order of the board of supervisors recites that the petitioners had constructed a toll-bridge at the point named, and had filed their bond and had conformed to the statute, and it was ordered that the applicants, plaintiff and his associates, "are hereby authorized to maintain a public toll-bridge . . . for the period of twenty years," fixing the license tax at forty dollars for the year 1879, from April 1st, which was paid thereafter yearly until the bridge burned down.   When the franchise was granted, section 2618 of the Political Code declared, as now, that, "in all counties of this state, public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public, or if laid out and erected by others, dedicated or abandoned to the public."

We think it clear that the bridge became a public highway; the public were invited to use it, and the only restriction or condition attached to the use by the public was the payment

of the toll which was authorized to be collected by the franchise. The franchise was granted for no other purpose than to enable the builders to maintain the bridge as a public highway. "In dedication, no particular formality is necessary; it is not affected by the statute of frauds; it may be made either with or without writing, by any act of the owner,—such as throwing open his land to public travel, . . . or an acquiescence in the use of his land for a highway." (*Harding* v. *Jasper*, 14 Cal. 643.) The use of the bridge was continued from 1879, the owners paying the annual license each year of use by the public until 1891, when its further use was made impossible by fire. The fact that a toll was charged did not affect the question of intended dedication, nor did it take away the public character of the bridge as a highway. (Elliott on Roads and Streets, secs. 3, 28, 69; *People* v. *Davidson*, 79 Cal. 166.) Section 2619 of the Political Code, as originally adopted, reads as follows: "Roads laid out and recorded as highways by order of the board of supervisors, and all roads used as such for a period of five years, are highways. Whenever any corporation owning a toll-bridge, or a turnpike, plank, or common wagon road, is dissolved, or discontinues the road or bridge, or has expired by limitation, the bridge or road becomes a highway." This section was amended in 1874 (Amendments 1873–74, p. 116), but not to affect Tuolumne County. In 1883 (Stats. 1883, p. 6), the section was again amended to read as we now have it, to wit:—

"Whenever the franchise for any toll-bridge . . . has expired by limitation or non-user, such bridge . . . becomes a free public highway; and no claim shall be valid against the public for right of way, or for the land or material comprising such bridge."

Respondent relies upon the provisions of the section as they now are as conclusive of the rights of plaintiff; citing *People* v. *Davidson*, 79 Cal. 166; *McMullin* v. *Leitch*, 83 Cal. 239; and *Blood* v. *Woods*, 95 Cal. 78. But when plaintiff and his associates built their bridge, and obtained a franchise to charge tolls for its use by the public, the statute imposed no such condition as was enacted after their rights had attached, and appellant claims that this section cannot be given a retroactive effect, and therefore does not apply.

*People* v. *Davidson*, *supra*, was the case of a toll-road constructed in 1861, upon land, title to which defendant subse-

quently acquired. The road was constructed and maintained at defendant's expense, for the purpose of using it as a toll-road. In 1878 he applied to the board of auditors of El Dorado County to fix the rates of toll, and an order was duly made, fixing the rates to be charged, and they were thereafter collected from all persons using this road. No other order was made, until in 1886 the board of supervisors of the county passed an order rescinding the aforesaid order of the board of auditors. Defendant had paid taxes on the road for twenty-five years. It was held,—1. That defendant had dedicated his road to a public use, and that it was to be regarded as a public easement, and not as private property; 2. That when the franchise expired, as it did upon revoking the order of the auditors, the road became a free public highway, and defendant was not entitled to recover anything as compensation for his land and improvements. In that case the franchise was not given for any definite period, and was held to have expired by limitation, within the meaning of section 2619 of the Political Code, when the franchise was revoked. In the present case the franchise had not expired by limitation, but if it expired by non-user, or was lost by abandonment, the same consequences must follow, regardless of the provisions of section 2619. Mr. Elliott says, in his work on roads and streets, that "a toll-bridge erected under legislative grant for the use of the public for ordinary travel is in so far a highway that upon its abandonment by the owners the public may claim the right to maintain and use it, if the local authorities so elect." The case cited in support of the text is *State* v. *Lawrence etc. Co.*, 22 Kan. 438, which was an action to determine the right of the builders of a toll-bridge to retain the property as their own after the termination of the charter, and it was held that when the right to take tolls ceased, the right of the public to use the bridge, free from any burden of tolls, attaches, without any right on the part of the builders to remove the structure or destroy the highway.

The question here, then, is, whether ceasing to use the remnants of the bridge from February, 1891, to November, 1897, taking no steps to rebuild, and manifesting no intention ever to rebuild, constitute acts of abandonment to the public.

We think the circumstances show an abandonment by plaintiff, and it would be unreasonable to hold that he could keep the public from occupying the piers and abutments until

his franchise expired by limitation, in face of the fact that he has for so long a time done nothing to restore the bridge, and did not, at the time the county appropriated the property, express any intention to rebuild. It is clear, upon authority and upon reason, that had his franchise expired by limitation, plaintiff would have had no claim for compensation for his bridge. His franchise expired in 1899, and it is not reasonable to assume that he would have rebuilt after 1897 in order to enjoy tolls for so short a period.

Plaintiff's contention that he had a property interest which, under the constitution, could not be taken from him without just compensation, cannot be maintained. As was said in *People* v. *Davidson, supra,* "it is not a case where private property is sought to be taken for public use without just compensation. In some of the states, compensation is made to toll-road owners upon the expiration of their franchises, but in those states it is expressly provided by law that such compensation shall be made. In this state there is no such provision, and section 2619 of the Political Code expressly declares to the contrary."

Plaintiff's compensation was to be derived from tolls levied by public authority. As was said in *Commonwealth* v. *Wilkinson,* 16 Pick. 175,[1] "the cost of construction and maintenance is reimbursed by a toll levied by public authority for this purpose." When plaintiff dedicated this bridge to the public on condition that he might charge such toll for twenty years as should be fixed by public authority each year, he, in effect, said: "When my franchise expires, or when I cease to maintain the bridge, or abandon it as a toll-bridge, the public shall have the free use thereof, without compensation to me." It was said in the Massachusetts case: "We think a turnpike is a public highway, established by public authority for public use, and is to be regarded as a public easement, and not as private property."

As already intimated, there is no difference between a toll-road and a toll-bridge, and the same principles must control in both cases.

The judgment is affirmed.

---

[1] 26 Am. Dec. 654.