[Sac. No. 2377. In Bank.—July 1, 1918.]

MENZEL ESTATE COMPANY (a Corporation), et al., Respondents, v. CITY OF REDDING (a Municipal Corporation), et al., Appellants.

FERRIES—PUBLIC HIGHWAY.—Although a ferry has been called a part of a highway, it is not in a strict technical sense under our law a highway, but only in the limited sense that when the term is used to designate the place where the liberty to operate a boat upon a river for the transportation for a reasonable toll of men, horses, and carriages is exercised, it is a public highway in so far as it is a continuation of the highway with which it connects.

ID.—ABANDONMENT OF FRANCHISE—FREE PUBLIC HIGHWAY NOT CREATED.—Where the owner of a franchise from a county board of supervisors for a ferry across a river from a city street on one bank to a county road on the opposite bank sold his franchise and equipment to another, and formally abandoned and relinquished his franchise, by a written instrument addressed to the board, which, in a single order, accepted the abandonment and granted a new franchise to the purchaser, the ferry did not by that abandonment become a "free public highway."

ID.—GRANT OF NEW FRANCHISE—POWER OF SUPERVISORS.—In such case the board of supervisors had power to grant a new franchise without making a preliminary finding that the cost of maintaining a free ferry was too great to assume.

ID.—FRANCHISE TRANSFERABLE.—A ferry franchise is transferable.

ID.—COLLATERAL ATTACK.—When a ferry franchise has been granted by competent authority, such as the board of supervisors of a county, collateral attack upon it upon such grounds as failure to advertise the franchise for sale and other similar objections will not be considered by a court.

ID.—ONE TERMINUS OF FERRY IN A CITY—RULE AS TO COLLATERAL ATTACK UNCHANGED.—The rule that a ferry franchise granted by competent authority is not subject to such collateral attack is not changed by the fact that one terminus of the ferry is in a city.

ID.—DESTROYING VALUE OF FRANCHISE—CONSTRUCTION OF FREE BRIDGE —MUNICIPAL CORPORATION—LIABILITY FOR DAMAGES.—Although a ferry franchise has one terminus at the end of a street in a city and the other terminus in another part of the county, and the city had jurisdiction and power to build the part of a bridge within its territory as a declared public necessity, the city, if the ferry franchise is made valueless by the finished bridge, may not escape liability for the damage sustained by the owner of the franchise, the municipal corporation being in the same position which a private individual would occupy, if without warrant of law he had constructed the bridge and injured the property of the owner of the franchise.

BRIDGES—ERECTION BY PUBLIC CORPORATION—DISCRETIONARY POWER.— A public corporation exercises discretionary power in deciding to erect a bridge, and that discretion may not be imposed upon an adjoining county or municipality.

APPEAL from a judgment of the Superior Court of Shasta County.   James G. Estep, Judge.

The facts are stated in the opinion of the court.

C. H. Braynard, City Attorney of the City of Redding, Braynard & Kimball, and W. D. Tillotson, for Appellants.

McCoy & Gans, and A. E. Bolton, for Respondents.

MELVIN, J.—Defendants appeal from a judgment for $3,750 for the detriment caused to the property of plaintiffs in a ferry franchise and equipment by the construction of a free bridge over the Sacramento River connecting a street in the city of Redding with a county road of the county

of Shasta. As originally commenced the action was one by which the plaintiffs sought to enjoin the city from completing the bridge. At the time of the trial it was all constructed except the north approach, and the court believing that all the detriment caused by the erection of the bridge might be compensated by damages, injunctive relief was denied.

There seems to be no serious disagreement between the contending parties regarding the facts, and there is no attack upon the title of plaintiffs to such property as may exist in the franchise issued to their predecessor, C. C. Bush. Appellants contend, however, that the supposed franchise under which Bush operated the ferry was void.

It appears that for many years a ferry has been maintained between the city of Redding and a point opposite on the Sacramento River where that stream runs east and west. The ferry-boat was operated on a cable stretching from bank to bank and the landings were respectively at the place where a street of Redding reached the river bank and a public road of the county of Shasta extended to the opposite bank.

Originally the ferry was called "Reid's Ferry." On January 9, 1890, the board of supervisors of Shasta County granted to J. W. Conant, for a term of twenty years, a franchise to operate a ferry for toll at that place. Conant conducted the ferry until 1897, when he sold the franchise and equipment to C. C. Bush. He then filed a writing with the board of supervisors setting forth the fact of the sale and Bush's purchase and asking for a cancellation of his franchise. At the same time Bush made written application for a franchise, and on May 8, 1897, the time noticed for the hearing of the application, the board made an order declaring Conant's franchise no longer of any effect and granting to Bush a franchise to operate the ferry for the term of twenty years.

He conducted the business until 1907, when he conveyed the franchise to Baker, and it has come to plaintiffs by various transfers since that time, and they, like their predecessors, have been operating under a claim of franchise from the county of Shasta at the place where defendants constructed the bridge.

It appears that in 1913 the trustees of the city of Redding declared that the public convenience demanded the erection of a free public bridge over the Sacramento River at "Reid's

Ferry''; that after a bond election, money was raised for the building of the bridge; and that the defendant, Chico Construction Company, having secured the contract, proceeded with the work. During the progress of the building of the bridge the cable was moved, and in 1915, while this action was pending, the boat broke loose during high water and floated downstream, thereby sustaining some damage. The court found that the breaking loose of the boat and cable was proximately caused by the acts of defendants.

The principal attack of defendants is upon the Bush franchise, which they insist was void. Their position is that when Conant filed a relinquishment of the franchise and the supervisors made the order in accordance therewith, the ferry became immediately a free public highway, and that, therefore, it was necessary, before the board could grant a franchise to Bush, that there should be a formal determination by the supervisors that the cost of erecting and the expense of maintaining a ferry was too great for the county to bear. In brief, the appellants contend that: 1. A franchise may expire by nonuser (*Sears* v. *Tuolumne Co.*, 132 Cal. 167, [64 Pac. 270]), and *a fortiori* by solemn relinquishment of the grantee; 2. When a franchise to collect tolls on a public highway expires by limitation, nonuser, or abandonment, the highway becomes at once a free public highway (Pol. Code, secs. 2618, 2619); 3. A ferry is a public highway, being a continuation of the highway with which it connects (citing authorities including 19 Cyc. 493; *People* v. *San Francisco & Alameda R. R. Co.*, 35 Cal. 606–619); 4. When the board of supervisors sought to grant a franchise to Bush, that body could only do so effectively by complying with the provisions of section 4041, subdivision 36, of the Political Code (formerly subdivision 33 of that section, and prior to that designation in the County Government Act, Statutes of 1893, subdivision 41 of section 25, page 359); 5. That statute requires, as a jurisdictional prerequisite to action by the board of supervisors, a finding that the cost of maintaining the highway was too great to justify its maintenance as a free public highway (*Gardella* v. *County of Amador & County of Calaveras*, 164 Cal. 555–560, [129 Pac. 993]); 6. No such formal finding on the record of the board of supervisors was proven (*Bedell* v. *Scott*, 126 Cal. 675, [59 Pac. 210]); 7. Therefore, the purported fran-

chise awarded to Bush was void and he and his successors never acquired any right to operate a ferry.

In analyzing these contentions we will first examine the contention that a ferry is a part of a highway. Undoubtedly a ferry franchise has been so called, as, for example, in the opinion of this court, prepared by Mr. Justice Henshaw, in *Vallejo Ferry Co.* v. *Solano Aquatic Club,* 165 Cal. 255, where, at page 271, [Ann. Cas. 1914C, 1197, 131 Pac. 864], the following language is used: "A ferry franchise emanating from the supreme power of the state or its authorized mandatories, is a grant to a named person empowering him to continue an interrupted land highway over the interrupting waters." In 19 Cyc. 493, cited by appellants, a ferry is called "a public highway," but with an important limitation. The definition there given (beginning on page 492), so far as of value to this discussion, is as follows: "A ferry is a liberty to have a boat upon a river for the transportation of men, horses, and carriages with their contents, for a reasonable toll. The term is also used to designate the place where such liberty is exercised. *In the latter sense* a ferry is a public highway, being a continuation of the highway with which it connects." (The italics are ours.)   It has been held in this state that a ferry-boat, operated upon a river as a connecting link between parts of a public road and used to convey the United States mails across the stream, is nevertheless private property subject to execution. (*Lathrop* v. *Middleton,* 23 Cal. 257, [83 Am. Dec. 112].)   Such property is in the same category as the rolling stock of a street railroad operating under a franchise. (*Risdon Iron & Locomotive Works* v. *Citizens' Traction Co.,* 122 Cal. 94, [68 Am. St. Rep. 25, 54 Pac. 529].)

It is clear that the waiver of his franchise by Conant was not a surrender to the county of all of his rights and of his ferry-boat, cable, and other appurtenances. The transaction of transferring the property and that of granting the new franchise to the purchaser were intermingled in such a manner that it may not justly be said that the ferry ever became a free public highway. Conant and his wife, it is true, filed with the supervisors a relinquishment of their franchise, but neither the county nor the public ever acquired the ferry-boat and operated it. The essential part of the instrument filed by the Conants was as follows:

"Whereas we have sold and conveyed to C. C. Bush, the said Ferry Franchise, boat, cable and all appliances, etc., thereto belonging.

"Now Therefore, we do hereby relinquish and abandon the said Franchise granted and ask and request that the same shall be cancelled and the sureties on the bond given, upon the granting of said franchise be relinquished from all further liabilities in the premises."

This was dated April 8, 1897, but was not filed until May 8th, the day upon which the new franchise was granted to Bush. The acceptance of the release of the Conant franchise, its formal cancellation by the board of supervisors, and the granting of the new franchise to Bush were all contained in a single order. To say that the instant of time elapsing between the cancellation of the one franchise and the granting of the other made the ferry a free public highway would be unduly to exalt a legal fiction. The elimination of the Conant franchise merely left the river for an instant without the formal easement of a right to collect tolls. It did not confer upon the public the right freely to use the boat which Conant had sold to Bush. In short, there was no proper analogy between that transaction and the abandonment of a toll road. Therefore, if it should be conceded that ferries come under the designation of "public highways" as that expression is used in section 4041, subdivision 36, of the Political Code, this ferry was never made by abandonment a *free public* highway. That subdivision gives to boards of supervisors power "to grant, on such terms, conditions and restrictions as in their judgment may be necessary and proper, licenses and franchises for taking tolls on public roads or highways, whenever in their judgment the expense necessary to operate or maintain such public roads or highways as free public highways is too great to justify the county in so operating or maintaining them."

But a ferry is not in a strict technical sense under our law a highway. The learned judge of the superior court who presided at the trial of this case covered this point in his very able written opinion as follows: "And there is no authority in this state that I have been able to find where a ferry and ferry franchise becomes or could become a public highway, and the weight of authority in other states holds only that a ferry is a connecting link between two public highways, and this is

borne out especially by the law of this state by Section 2618 of our Political Code which defines public highways as 'roads, streets, alleys, lanes, courts, places, trails, and bridges,' but does not cover or include a ferry.   Also Section 2619 of the Political Code, and one that is relied upon by the defendants as including a toll ferry, reads as follows: 'Whenever the franchise for any toll-bridge, trail, turnpike, plank, or common wagon-road has expired by limitation or non-user, such bridge, trail, turnpike, plank or common wagon-road becomes a free public highway.'   And in this section toll ferries or ferries are not included, and it will be noted that no mention is made in this section of the matter of ferry, and it cannot therefore be successfully claimed that this section has application to the matter of the ferry or to the case in hand, and all of the cases cited by the defendants' counsel to the effect that this ferry became a free, public highway upon the filing of the instrument in writing by Conant and wife were based upon the assumption that a ferry was a public highway.''

We conclude, therefore, that the board of supervisors was empowered to grant the franchise to Bush without the preliminary finding that the cost of maintaining a free ferry was too great for the county to assume.

The appellants also contend that a ferry franchise is not transferable, citing in this behalf certain early Californian decisions which seem in a measure to support this contention. All force which those decisions may have had originally has been lost by subsequent legislation and decision.   Upon this branch of the case it is sufficient to cite the able and exhaustive opinion of Mr. Justice Hart in *People* v. *Lawley,* 17 Cal. App. 331, [119 Pac. 1089], in which the very decisions cited by counsel for appellants in this case are reviewed and a conclusion reached which adversely disposes of a contention identical with that made in the case at bar.   This court denied a petition to transfer *People* v. *Lawley.*

The franchise for the ferry having been granted by competent authority, namely, the board of supervisors of the county of Shasta, the various collateral attacks sought to be made upon it upon such grounds, for example, as failure to advertise the franchise for sale, and those based upon other objections, will not be considered by the court.   (*Norris* v. *Farmers & Teamsters' Co.,* 6 Cal. 590, [65 Am. Dec. 535]; *Vallejo Ferry Co.* v. *Lang and McPherson,* 161 Cal. 672, [120 Pac.

421].)    And this rule is not changed by the fact that one terminus of the ferry is, and always has been, in the city of Redding.    (*Vallejo Ferry Co.* v. *Solano Aquatic Club,* 165 Cal. 255–265, [Ann. Cas. 1914C, 1197, 131 Pac. 864].)

Defendants further assert that the city of Redding, as a municipal corporation, had power to order the construction of the free bridge as a matter `of public convenience; that the city as one of the state's mandatories had authority to make a finding to the effect that a free bridge was necessary for public convenience; and that, therefore, any loss to respondents is *damnum absque injuria,* at least so far as the detriment to the value of their franchise is involved, because (so runs the argument) every franchise for a toll ferry is taken with the knowledge that the state has authority at any time, in case of necessity, to provide for competing means of travel, that knowledge becoming, in effect, a part of every contract between the state and the grantee of the privilege to operate a ferry.    It will not be necessary here to discuss the exact extent of the state's power through one of its mandatories to violate the franchise of an existing ferry by authorizing the building of a free bridge either entirely within the territory of the governmental agency directing the construction or connecting its territory with that of another agent of the state joining in the declaration of public necessity for the improvement.    In this case we have a state of facts involving the construction of a bridge by the city of Redding without authority of the county of Shasta to extend the structure into its road district on the opposite side of the Sacramento River from the city.    We can find no statute which confers upon the city of Redding power to declare for another part of the county the necessity for the bridge.    It has been held by the district court of appeal in respect to this very bridge that the city could not force the county to pay for the part of the structure which is without the city limits, the board of supervisors of Shasta County having declined to participate in the declaration of necessity for the improvement or to appropriate any money to pay for it.    (See *City of Redding* v. *Shasta County,* 36 Cal. App. 48, [171 Pac. 806], a case in which a petition for hearing in this court was denied.)    A public corporation exercises discretionary power in deciding to erect a bridge (*Coffey* v. *City of Berkeley,* 170 Cal. 258, [149 Pac. 559]), and that discretion may not be imposed upon an adjoin-

ing county or municipality. Therefore the city of Redding may not take whatever benefit might have been derived from a finding of public necessity for a bridge if the river at the place to be spanned had been wholly within the corporate limits; and the city may not escape liability because it had jurisdiction and power to build the part of the bridge within its territory as a declared public necessity. The franchise was not a divisible entity. It was made valueless by the finished bridge. The tangible property also was injured by the bridge, which was virtually then in a completed state. The city of Redding, therefore, is in essentially the same position which a private individual would occupy, if without warrant of law he had constructed the bridge and injured the property of the respondents.

No other matters discussed in the briefs require discussion or analysis.

The judgment is affirmed.

Shaw, J., Sloss, J., Richards, J., *pro tem.,* Lorigan, J., Wilbur, J., and Angellotti, C. J., concurred.