L. A. ANDREW, State Superintendent of Banking, Appellee, v. CITIZENS STATE BANK OF EAGLE GROVE et al., Appellees; STATE OF IOWA et al., Appellants.

**MUNICIPAL CORPORATIONS:** Fiscal Management—"Public Funds" Defined. Funds raised by general taxation for the maintenance of public libraries, under Ch. 299, Code of 1924, are public funds, and within the protection of the State Sinking Fund Act. (Sec. 1090-a2, Code of 1927.)

Headnote 1: 7 C. J. p. 485 (Anno.); 18 C. J. p. 585 (Anno.); 32 Cyc p. 755.

Headnote 1: 22 R. C. L. 222.

*Appeal from Wright District Court.*—G. D. THOMPSON, Judge.

MARCH 15, 1927.

In the matter of the receivership of the Citizens State Bank of Eagle Grove, the city of Eagle Grove petitioned for the allowance of its claims against the state sinking fund for public moneys on deposit in the failed bank. The claim was allowed, and the state officials appeal.—*Affirmed.*

*John Fletcher*, Attorney-general, and *Earl F. Wisdom*, Assistant Attorney-general, for appellants.

*McGrath, Archerd & McGrath*, for L. A. Andrew, Receiver, appellee.

*Hobbet & Blue*, for City of Eagle Grove, Intervener, appellee.

MORLING, J.—The correctness of the allowance of the claim is conceded, except as to the library fund of $1,321.40. The appeal has to do only with that fund, and the only question is whether it is within the protection of the State Sinking Fund Act, Chapters 173 and 174, Laws of the Forty-first General Assembly. The contention of the State and its officials is that the library fund was not a part of the public moneys of the

municipality. It is not disputed that the library was a free public library, established pursuant to Chapter 299, Code of 1924. The library is not a joint library, for which provision is made by Section 5857 and the last clause of Section 5865, Code of 1924.

By Chapter 299, cities and towns may provide for the formation and maintenance of free public libraries, may acquire suitable buildings, and receive and dispose of gifts. If such a library is established, a board of library trustees must be appointed by the mayor, with the approval of the council, and such board has exclusive control of the expenditures of all taxes levied for library purposes. All moneys received and set apart for maintenance must be deposited in the city treasury to the credit of the library fund, and must be kept by the city treasurer separate from all other moneys, and paid out on the order of the board of trustees, signed by the president and the secretary. The board is required to make to the city council detailed reports, which must include the amount of money expended in maintenance. By Section 6211, the city has power to levy annual taxes for maintenance and for building. The law does not in this connection provide for a library corporation. The testimony is that the public library of Eagle Grove is owned by the city, that the city council levied taxes for its maintenance each year, and that the library fund under discussion represents money that has been raised by taxation for support of the public library in Eagle Grove. According to the law, and according to the evidence, the city library and the fund in dispute belong to the city. They are public property and public funds.

It seems to be the thought of counsel for the State that this particular fund was segregated from the other funds in the hands of the city treasurer, was passed to the control of the library board, and was no longer in the control of the city or the city treasurer, or a public fund of the city. This assumption is based upon the following evidence: The city clerk testifies that the library fund was kept in the defendant bank, and that the library board issued its own checks on that fund. He testifies that the library tax money came to him in the name of the city treasurer. He says that he draws to the secretary of the library board an order on the treasurer, when he demands it.

"Q. And, after you turned that over to the secretary of

the library board, checks could then be drawn by that library board by the secretary of the library board without any signature from yourself or the mayor? A. Yes.''

The librarian testifies that the money used for maintenance of the library is received from the city clerk; that the checks are signed by the president and the secretary of the library board. No witness testifies that the law had been violated, or that the library fund was not in the treasurer's hands or in his custody.

The city clerk was doubtless trying to explain the procedure under Section 6229, which requires the county treasurer to give monthly notice to the mayor of the amount collected for each fund, and the mayor to draw an order therefor in favor of the city treasurer, countersigned by the clerk, upon the county treasurer, and requires the county treasurer to pay such tax to the city treasurer only on such order. In testifying to the method of drawing on city funds, he was doubtless referring to the procedure required by Sections 5641 and 5644, prohibiting the clerk from drawing warrants except upon the vote of the council, and requiring the treasurer to receive the money payable to the city and disburse it only on warrants signed by the proper officer. The city clerk in his testimony did not claim to handle the city funds or to have anything to do with them. It is the city treasurer, and not the city clerk, with whom the funds are to be deposited, and by whom they are to be paid out; and it is the treasurer, and not the clerk, who is required to keep the library fund separate. Section 5865. Except as otherwise provided, warrants are to be drawn and paid as provided by Sections 5641 and 5644. The library fund, however, is an exception to the general rule, and it is to be paid out on the order of the board of library trustees, signed by its president and secretary. These officers, nevertheless, in what they do officially are the officers of the city to whom are specially confided these particular duties. The city treasurer is the officer of the city required to keep the funds. Those funds, when they were paid over by the county treasurer on the order of the mayor and the city clerk, did not cease to be public funds. They were city funds. The law required them to be deposited in the city treasury. We cannot presume that they were not so deposited, or that they were not kept by the city treasurer as the law requires. The failed bank was properly designated as city depositary.

The court properly held the library fund to be public funds and a part of the public deposits of the city.

The judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.