WOOD BROTHERS CONSTRUCTION COMPANY, Appellant, v. W. G. C. BAGLEY, Treasurer of State, Appellee.

No. 46091.

NOVEMBER 24, 1942.

Stipp, Perry, Bannister & Starzinger, of Des Moines, and Woods, Aitken & Aitken, of Lincoln, Nebraska, for appellant.

John M. Rankin, Attorney General, and Floyd Philbrick, Assistant Attorney General, for appellee.

HALE, J.— Appellant is a Nebraska corporation. During the years 1936 to 1941 it was engaged under a contract with the United States Government in pile-dike construction and other channel-control work on the Missouri River between Council Bluffs and Whiting, Iowa. In the course of said construction work, which was paid for from funds of the United States Government, appellant purchased and used motor fuel, and paid thereon the tax imposed by the state of Iowa ·of 3 cents per gallon. All of such fuel was used in tractors, boats, and floats in carrying on said construction work and none of said fuel was used in propelling vehicles over the public highways of the state of Iowa.

Appellant applied for and received a refund permit, No. 97734, from the Treasurer of the State of Iowa, under the provisions of section 5093.30 of the Code, prior to the purchase of said motor fuel, and paid the license fee by having the same added to the price of the fuel. Within 90 days from the date of purchase of the fuel appellant filed claim under oath with the Treasurer of State, together with the original invoices of the dealers from whom the motor fuel had been purchased, stating the manner in which the motor fuel was used and that it was not used on any highway in the state of Iowa. On June 14, 1941, demand was made upon the appellee, Treasurer of the State of Iowa, for payment of the claim so filed, and the appellee refused payment on the ground that said motor fuel had been used in construction work paid for from public funds.

On September 6, 1941, appellant filed in the district court its petition for a writ of mandamus, setting out the facts as above, asking that writ issue commanding the appellee to allow the claim in the sum of $9,810.16, and requiring appellee to pay the same, and for general equitable relief. Appellee thereafter filed motion to dismiss, for the reason that it appears said motor-vehicle fuel upon which the appellant seeks refund of the tax paid by it was used in construction work paid for from public funds. Appellee's motion to dismiss was sustained and appellant elected to stand on petition and appeals to this court.

This appeal involves only one question, the meaning of the sixth paragraph of section 5093.29, Code of Iowa, 1939, which is as follows:

"No tax refund shall be paid to any person, firm, or corporation on any motor vehicle fuel used in any construction or maintenance work which is paid for from public funds * * *."

So that the question finally narrows down to the definition of the words "public funds" as found in said statute. In other words, are the funds of the United States Government comprehended within the words "public funds" as used in the statute? Appellant contends that the term "public funds," as so used, refers only to the funds of the state of Iowa and its political subdivisions.

The statute, a portion of which is the subject of dispute herein, was originally passed in 1925, chapter 6, Acts of the Forty-first General Assembly, imposing a tax of 2 cents per gallon on motor-vehicle fuel, afterward, in 1927, increased to 3 cents by chapter 103, Acts of the Forty-second General Assembly. At the Extra Session of the Forty-fifth General Assembly in 1934 the original statute was repealed and chapter 56 of the Laws of the Extra Session of the Forty-fifth General Assembly was enacted and took effect April 1, 1934. This is the statute which, with some changes not important here, now constitutes chapter 251.3 of the Code of 1939.

The purpose of the act is found in the first paragraph therein, section 5093.01 of the Code, and in substance it is stated that it is designed to continue the policy of collecting for highway purposes an excise tax or license fee on all motor-vehicle fuel used to propel motor vehicles on the highways of the state, to provide such regulations as will prevent the evasion of the payment of such license fees, to insure the collection thereof, and to that end to collect the license fee on all motor-vehicle fuel in the state from the first person receiving the same in this state for sale or use in this state, to require such person, and all subsequent sellers, to collect such license fee from purchasers to whom the same is sold for use or resale in this state, so that said license fees shall ultimately be paid by the person using said motor-vehicle fuel in this state, and to refund to

such user such license fees so paid by him on all motor-vehicle fuel not used by him in the operation of motor vehicles on the public highway.

It is with the refund of such tax that we are here concerned, and the provisions therefor will be found in section 5093.29. Said section provides for the refund of the tax paid on any motor-vehicle fuel used for other purposes than in motor vehicles operated or intended to be operated upon the public highways of the state, upon presentation to the treasurer of a claim for such refund, on forms prescribed by the regulations as to the invoices and the name of the person from whom the motor fuel was purchased, the date, etc., with the statement that such fuel was used by the claimant otherwise than in motor vehicles operated or intended to be operated upon the public highways of the state.

Other provisions are made as to the manner and time of the collection of the refund, and in the sixth paragraph of said Code section is found the provision heretofore quoted:

"No tax refund shall be paid to any person, firm, or corporation on any motor vehicle fuel used in any construction or maintenance work which is paid for from public funds," to which was later added by section 4, chapter 133, Acts of the Forty-eighth General Assembly the words, "but this provision shall not be construed as requiring payment of the tax herein imposed with respect to the sale or use of fuel oil so used unless the same is used as. a fuel to propel motor vehicles operated upon the public highways for purposes of transportation."

In substance, the foregoing provisions for the collection of the motor-vehicle-fuel excise tax provide that a tax of 3 cents per gallon shall be paid on all motor-vehicle fuel. This tax is paid by the importer and passed on to the user, who, if he uses the gasoline for motor-vehicle transportation, pays the tax, but if, however, the gasoline is used for the other purposes mentioned in the Code section, the purchaser receives his refund from the state treasurer. So that the motor-vehicle fuel used for any other purpose than propelling motor vehicles, whether used in the construction of a building or by private individuals in farm tractors, or for various other purposes, is

not subject to the tax, and such motor-vehicle fuel so used is therefore, by this process of refund, exempted from the tax. But to this provision for refund there is one exception, that no tax refund on any motor-vehicle fuel can be made by the state treasurer if such fuel is used in construction or maintenance work which is paid for from public funds. With this exception, all motor-vehicle fuel not used to propel motor vehicles operated upon the public highways is exempt from the tax through the foregoing process of original collection and refund.

The character of the use of the motor-vehicle fuel by the appellant in this case, and the nature of the fuel used, would entitle it to such refund if used in private construction work, but since appellant was to be, and was, paid by the United States Government, under the foregoing provisions it would not be entitled to any refund if such payment is construed to be from ''public funds'' under the provisions of the statute. But, if not from ''public funds,'' then appellant is entitled to a refund, as would be any contractor with a private individual, firm, or corporation.

It is the contention of appellant that the prohibition of refunds in case of payment from public funds in Code section 5093.29 was enacted following the decision of the Iowa Supreme Court in the case of Des Moines Asphalt Pav. Co. v. Johnson, 213 Iowa 594, 239 N. W. 575. That case held that the construction company, engaged in paving a state highway, was entitled to a refund on gasoline used in the building of a public highway under construction and not open to travel. Whatever the effect of the foregoing decision, or whether it induced the enactment of the amendment, we think is not of great importance. It is questionable if such decision led to the legislation, since, as a matter of fact, the amendment was not added immediately following the decision, at the next session of the legislature, but at the session following that, when the gasoline law was rewritten. The decision in the Des Moines Asphalt Paving Company case was rendered December 16, 1931. The provision refusing exemption, as we have stated, was not enacted until the Extra Session of the Forty-fifth General Assembly, that is until March 9, 1934, and then as a part of the entire statute.

The appellant further contends that the purpose of the amendment will be to exact a tax on construction work paid for from federal funds by denying a refund of the tax on the gasoline consumed in such work, and that this would depart from the original purpose of the act. We do not so see it. Appellant argues that all that the provision accomplished was to eliminate the unnecessary refunds on gasoline used in construction or maintenance work paid for from public funds, and that when gasoline is consumed on work paid for from public funds the cost of the work includes the price paid for the gasoline increased by the tax thereon paid by the importer, and the payment for the work out of public funds operates in itself to take out of the public treasury the tax previously collected on such gasoline; that the state, having collected the tax, would be compelled to refund it indirectly to the contractor by the increased contract price of the public work, and that, therefore, the state would be in the same position as if no tax had been collected in the first instance. And therefore a second refund of the tax would be unnecessary. This argument may be true if all the public funds were those of the state exclusively, but there is no question that other public funds are included under the law, such as those of school districts, counties, etc., and the appellant's theory would fail as to such subdivisions of the state. The political subdivisions such as counties, school districts, etc., would not receive the tax in the first instance and the only effect of appellant's argument, if such be true, would be that the state might profit in its reception of the tax at the expense of its political subdivisions.

Whatever theories we may assume, the fact remains that it is the intent of the legislature for which we are seeking, and this intent, it appears to us, may be gathered from the plain words of the exception clause of the statute. It is apparent that the purpose of the legislature was to provide for the uniform administration of the law and avoidance of unnecessary complications. So that the provision of the law was that, without any exception which concerns us here, all such tax must be paid in the first instance, and it was not left to the importer or seller of the gasoline to determine whether the fuel was to

be used in propelling motor vehicles upon the highway or to be used in construction or other exempted work. The right to a refund was to be established by a proper showing in the office of the Treasurer of State. If exemption by way of refund should be granted to some work paid for by public funds, and not to other work paid for by other public funds, controversies would occur as to exemptions. As, for instance, whether or not federal funds turned over to the state, or to some subdivision of the state, as has frequently occurred in the case of federal assistance to various counties and projects throughout the state, should be entitled to a refund. Such questions cannot arise under the law as it now is, if all such refunds are forbidden. To avoid such complications was no doubt one reason why, in its endeavor to carry out the purpose of the law, the legislature provided that all public funds, without specifying whether federal, school district, state, or county, should be denied the privilege of a refund.

The construction cost of public improvements, including the cost of motor fuel added by the contractor, must eventually be paid by the taxpayers. Whether federal or state tax pays for these improvements, eventually such cost is shared by all the people, possibly not in exact and equitable proportion, but such equality in any taxing plan is hardly capable of attainment. The state in this case receives the benefit of the tax exacted, as other states with like statutes will likewise receive such benefit.

The reasons for the enactment of this provision of the statute seem plain and we see no reason for attempting a strained or forced construction of the words used. We are of the opinion that the words "public" or "public funds" mean what they say, and we see nothing in the act which will enable us to discriminate as to federal funds any more than as to those of one of the subdivisions of the state. They are all public funds under the definition found in 42 Am. Jur. 718, section 2:

"Public funds are moneys belonging to the United States or a corporate agency of the Federal Government, a state or subdivision thereof, or a municipal corporation. They represent moneys raised by the operation of law for the support of the government or for the discharge of its obligations. In other

words, they constitute 'revenue' which, in turn, is defined as 'the income of the government arising from taxation, duties, and the like.' ''

■■■ There are numerous definitions of the words "public" and "public funds" found in the books and it would serve no useful purpose even to attempt to set out these definitions as applied to particular cases in which they are used. We ourselves have said that funds raised by general taxation for the maintenance of public libraries are public funds. Andrew v. Citizens State Bk., 203 Iowa 349, 212 N. W. 742; Storen v. Sexton, 209 Ind. 509, 200 N. E. 254, 104 A. L. R. 1359. And so also the funds of a school district. Runyan v. Farmers Bank, 210 Iowa 147, 230 N. W. 418.

Appellant does not deny that the state would have the power to tax gasoline used in construction work paid for from public funds of the Government of the United States, and this could not well be disputed. See State of Alabama v. King & Boozer, November 1941, 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, 140 A. L. R. 615; and Curry v. United States, November 1941, 314 U. S. 14, 62 S. Ct. 48, 86 L. Ed. 9. See, also, Trinityfarm Constr. Co. v. Grosjean, 291 U. S. 466, 54 S. Ct. 469, 78 L. Ed. 918, and cases cited. Thus the motor-vehicle-fuel tax under consideration here is not exempted under section 5093.03 of the Code, providing, "that no license fee shall be imposed on motor vehicle fuel * * * sold to the United States or any of its instrumentalities or agencies, unless now or hereafter permitted by the constitution and laws of the United States * * *.''

There is no exception under the terms of the motor-vehicle-fuel tax law to gasoline used in the construction of United States works. Had the legislature intended that there should be a refund as to federal construction, it could easily have so specified; and had it intended that that portion of the law denying the refund limited such denial only to state projects, it could also have so provided. The words "of the state" could have followed the words "public funds" in the statute, if such had been the legislative intent. But as it stands, it is our opinion that it applies not only to public funds of the state but also to all sub-

divisions or to any public fund whatsoever, including federal funds.

We are satisfied that the district court was correct in dismissing plaintiff's petition and the cause is, therefore, affirmed.— Affirmed.

WENNERSTRUM, C. J., and GARFIELD, OLIVER, MITCHELL, BLISS, and MILLER, JJ., concur.