[Civ. No. 18476. First Dist., Div. One. Jan. 27, 1960.]

YOSEMITE PARK AND CURRY COMPANY (a Corporation), Respondent, v. DEPARTMENT OF MOTOR VEHICLES et al., Appellants.

Stanley Mosk, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman and Harry W. Low, Deputy Attorneys General, for Appellants.

Brobeck, Phleger & Harrison and Richard Haas for Respondent.

DUNIWAY, J.—The sole question presented by this appeal is whether the statutes of this state require registration of, and impose registration fees and motor vehicle license fees in relation to vehicles owned by respondent and operated exclusively on the federal government's roads in Yosemite National Park. The court below held that they do not, and we agree.

The facts have been presented mainly by stipulation, and the lower court adopted these stipulations as its findings.

Respondent, as concessionaire, is engaged in the operation of hotels, stores, transportation services and other activities in the park, pursuant to a series of contracts between it and the United States. In order that it may perform its duties under these contracts and provide in the park the services required and approved by the Secretary of the Interior, respondent owns and operates, and has done so for many years, numerous motor vehicles, including buses, trucks and passenger automobiles.

Within the limits of the park there lies a system of roads owned, maintained, improved, repaired, controlled and policed exclusively by the United States. These activities are financed solely by the United States; for over 30 years, no funds of the State of California or any of its political subdivisions have been expended for any of these purposes. Motor vehicles may use these roads only if written permission has been issued by the United States, for which permission, in most cases, fees are imposed. Certain of respondent's vehicles were for some time operated exclusively upon these federal roads.

When respondent brought those cars out of the park, it registered them and paid the registration fees and license fees that, as it conceded, then became due. The Department of Motor Vehicles imposed fees and penalties for the period when the vehicles were operated solely upon the federal roads. Payment was made under protest, followed by proper claim for refund, which was denied. This action followed. Respondent prayed for both refunds and declaratory relief.

Judgment was awarded in accordance with this prayer. The court, in its conclusions of law, held that the federal roads are not highways or public highways within the meaning of those provisions of the Vehicle Code which require registration of motor vehicles and the payment of registration and weight fees thereon, or within the meaning of the provisions of the Vehicle License Fee Law; that those provisions do not apply to the operation by respondent of its motor vehicles on such

roads, and respondent is not required by those provisions to register those vehicles, or to pay any registration, weight or license fees in regard thereto; and that respondent is entitled to recover the fees and penalties which defendants have erroneously collected.

The history of the land comprising the park and of the acts of California and the United States which bear upon this area are discussed in *Collins* v. *Yosemite Park & Curry Co.*, 304 U.S. 518 [58 S.Ct. 1009, 82 L.Ed. 1502], and *Standard Oil Co.* v. *Johnson*, 10 Cal.2d 758 [76 P.2d 1184]. The applicable statutes are Statutes 1919, chapter 51, page 74, and 41 United States Statutes, chapter 218, page 731. By the first of these acts California reserved "the right to tax persons and corporations, their franchises and property on the lands included in" the park, and by the second the United States consented to this reservation. The question before us is not as to the power of the state to levy the fees involved. Power to do so would appear to be established by the Yosemite Park and Curry Company and Standard Oil Company cases, although we do not decide that question. (See also *Yosemite Park & Curry Co.* v. *Johnson*, 10 Cal.2d 770 [76 P.2d 1191]; *Rainier Nat. Park Co.* v. *Martin*, 18 F. Supp. 481, aff'd 302 U.S. 661 [58 S.Ct. 478, 82 L.Ed. 511]; *Rainier Nat. Park Co.* v. *Henneford*, 182 Wash. 159 [45 P.2d 617] cert. den. 296 U.S. 647 [56 S.Ct. 307, 80 L.Ed. 460]; *Superior Bath Co.* v. *McCarroll*, 312 U.S. 176 [61 S.Ct. 503, 85 L.Ed. 721]; *Buckstaff Co.* v. *McKinley*, 308 U.S. 358 [60 S.Ct. 279, 84 L.Ed. 322]; *State ex rel. State Board of Equalization* v. *Glacier Park Co.*, 118 Mont. 205 [164 P.2d 366]; *Wilson* v. *Cook*, 327 U.S. 474 [66 S.Ct. 663, 90 L.Ed. 793]; *Texas Co.* v. *Siefried*, 60 Wyo. 142 [147 P.2d 837].) The question, rather, is whether the state has attempted to exercise its power.

Serious questions might be raised as to the power of the state to impose many of the requirements of the Vehicle Code relating to registration upon respondent as owner of these vehicles if it were held that the state has attempted to do so (*Collins* v. *Yosemite Park & Curry Co.*, 304 U.S. 518 [58 S.Ct. 1009, 82 L.Ed. 1502]), as well as questions about their separability from the fee provisions under Vehicle Code, section 5. (*Standard Oil Co.* v. *Johnson, supra*, 10 Cal.2d 758.) However, as will be shown, it is unnecessary for us to reach these questions.

We come, then, to the question as to whether the Legislature

has imposed the vehicle license fee and the registration requirements and fees, in relation to those of respondent's vehicles that are here involved. The statutory provisions most directly pertinent, certain key provisions being italicized by us, are the following:

Revenue and Taxation Code ("Vehicle License Fee Law")

Section 10751. "A license fee is hereby imposed *for the privilege of operating upon the public highways in this State* any vehicle *of a type which is subject to registration under the Vehicle Code.*"

Section 10702. " 'Vehicle' means every vehicle *subject to registration under the Vehicle Code.*"

Section 10758. "The license fee imposed . . . is in lieu of all taxes according to value levied . . . on vehicles *of a type subject to registration* . . . whether or not the vehicles are registered . . ."

Section 10853. "Whenever any vehicle *is operated upon any highway of this State* without the license fee having first been paid . . . the fee is delinquent."

Section 10855. "Evidence of nonoperation of a vehicle shall be given by an affidavit . . ."

Section 10856. "Upon receipt of the application for renewal and affidavit of nonoperation, the department shall collect the proper fee for the current calendar year. No penalty shall be imposed if the department receives the application and affidavit within 30 days *after the date of first operation* of the vehicle during the current year."

Sections 11001-11005 deal with disposition of the fees collected, and make it clear that the funds are to be used primarily for the state's highways.

Vehicle Code (numbers of sections are those used before the 1959 revision).

Section 81. " 'Street' or 'highway' is *a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel.*"

Section 82. " 'Private road or driveway' is a way or place *in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public.*"

Section 140. "It is a misdemeanor for any person *to drive or move . . . upon any highway* any vehicle *of a type required to be registered hereunder* which is not registered or for which the appropriate fee has not been paid . . ."

Section 141. "... [subject to certain exemptions] *registration* of the following vehicles *is required when driven or moved upon a highway*: Any motor vehicle ..."

Section 164.5. "When the registration of a vehicle has expired ... *and such vehicle is not thereafter operated upon the highways,* then any application for renewal ... *shall be accompanied by a certificate of nonoperation* and such application ... shall be received by the department upon payment of the proper fees ... and without penalty for any such fees imposed under this act or under Chapter 362, Statutes of 1935, or any act continuing the tax thereby imposed or substituting a similar tax, *provided that the department receives said application and certificate of nonoperation within 30 days after the date said vehicle is first operated during the current calendar year.*"

Section 370. "... [a] registration fee of eight dollars ($8) shall be paid to the department for the registration of *every vehicle of a type subject to registration, except for such thereof as are expressly exempted under this code* from the payment of registration fees. ..."

Section 372, subdivision (a). "In addition to the registration fee specified in Section 370, there shall be paid fees as set forth in this section for the registration of *every vehicle of a type subject to registration* used or maintained for the transportation of persons for hire, compensation or profit or designed, used or maintained primarily for the transportation of property. ..." [Schedules for different weights follow.]

Section 378, subdivision (a) (1). "Whenever any vehicle is operated *upon any highway of this State* without the registration fee having first been paid ... such fee is delinquent."

Section 383.1, subdivision (f). "The provisions of this section [for a refund] shall also apply in the event ... fees have been paid for the registration of a vehicle which is not in fact *operated upon the highways of this State* ..."

Although there are exemption sections in both codes, none of them expressly exempts vehicles operated as respondent's vehicles were operated.

Article XXVI, section 2, of the California Constitution requires that all registration fees and vehicle license fees must be used "for street and highway purposes" and to enforce police regulations respecting vehicles "used upon the public streets and highways of this State."

The earlier acts dealing with the registration of motor ve-

hicles, the predecessors of the Vehicle Code, used principally the term "public highway," rather than "highway." (Stats. 1905, ch. 612, p. 816; Stats. 1913, ch. 326, p. 639; Stats. 1915, ch. 188, p. 397; Stats. 1917, ch. 218, p. 382; Stats. 1919, ch. 147, p. 191; Stats. 1923, ch. 266, p. 517; Stats. 1931, ch. 1026, p. 2099.) The predecessor of the Vehicle License Fee Law was chapter 362, Statutes of 1935. The phrase "public highway" in the Revenue and Taxation Code and the word "highway" in the Vehicle Code have developed independently of each other. Nevertheless, the word "public" adds nothing to the word "highway" as it is defined in the Vehicle Code. There seems to have been no difference in meaning between these two terms under the registration acts, and the Vehicle Code replaced " 'highway' or 'public highway' " with " 'highway,' " with the obvious implication, in view of section 2 of that code and the history of these acts, that no change in meaning resulted. Also, ". . . the Vehicle Code was passed by the same session of the legislature that passed the License Fee Act. The latter constantly refers to and incorporates some of the provisions of the former. The two statutes are *in pari materia,* and, under accepted principles of law, should be read together." (*Ingels* v. *Riley,* 5 Cal.2d 154, 164 [53 P.2d 939, 103 A.L.R. 1].) The parties regard the definition of "highway" in Vehicle Code, section 81, to be applicable to the Vehicle License Fee Law, also, and are correct in so doing.

Even a cursory examination of the Vehicle Code will show that it contains almost innumerable provisions of a police or regulatory character, dealing with the use of and conduct on the "highways," including the most detailed regulations of traffic. There is no exception in any of them as to the federal roads in Yosemite National Park, yet it is clear that these provisions do not apply there because of the Act of 1919 (Stats. 1919, ch. 51, p. 74, *supra*) which ceded jurisdiction to the United States. These provisions all relate to "highways" as defined in section 81, and thus, for those purposes, the definition of "highways" cannot be said to include those federal roads. It would be anomalous if it were held that this same definition does nevertheless include those roads for purposes of the vehicle license fee and the registration requirements and fees. It may be that the Legislature could have so provided, at least as to the fees, because it did not cede, but reserved, its taxing authority within the park, but we are convinced that it did not so provide.

It will be noted that the Vehicle License Fee Law imposes a fee ''for the privilege of operating upon the public highways in this State'' (Rev. & Tax. Code, § 10751), and that the fee becomes delinquent ''whenever any vehicle is operated upon any highway of this State . . .'' (Rev. & Tax. Code, § 10853.) Under sections 10855 and 10856, it is clear that if the vehicle is not operated on a highway ''in'' (§ 10751) or ''of'' (§ 10853) this state, the fee is not payable. The registration fee and registration requirements are likewise applicable only to vehicles operated upon ''any highway,'' ''a highway,'' or ''the highways'' (Veh. Code, §§ 140, 141; 164.5). Certain sections dealing with registration refer to ''highway(s) of this State'' (Veh. Code, §§ 378 subd. (a) (1), 383.1 subd. (f)), and compare Vehicle Code, section 249.03 (''highway(s) in this State'' and ''highways of this State''), section 249.05 (''highways of this State'' and ''the highways''), section 249.06 (''public highways''), section 249.09 (''highways in this State'' and ''highways of this State''), section 249.10 (''highways of this State'' and ''the highways''), section 249.11 (''highways of this State''), section 249.12 (''highways of this State''), all relating to caravaning, and repealed in 1959 (Stats. 1959, ch. 3, p. 1523). Both fees (registration and vehicle license) have been held by our Supreme Court to be *''one excise tax levied by the state upon the privilege of operating motor vehicles on the highways of this state.''* (*Ingels* v. *Riley, supra,* 5 Cal.2d 154, 164.)

It was stipulated at the trial that ''if a particular motor vehicle is not operated over a way or place considered by the Department of Motor Vehicles to be a highway, then under the administrative practice of the Department . . ., registration of the vehicle is not required and no taxes or fees are payable thereon, by virtue of either section 10751 of the Revenue and Taxation Code, or sections 370 and 372 of the Motor Vehicle Code.'' This interpretation by the department we deem correct.

It is also established that until 1955, the Department of Motor Vehicles has never asserted that either the Vehicle License Fee Law or the registration requirements of the Vehicle Code, including the registration fee requirements, apply to respondent's vehicles while operated solely on the federal roads within the park. This long standing practice of the department charged with the administration of these laws is persuasive as to their meaning. (*Richfield Oil Corp.* v. *Craw-*

*ford,* 39 Cal.2d 729, 736 [249 P.2d 600] ; and see *Federal Trade Com.* v. *Bunte Bros.,* 312 U.S. 349, 351 [61 S.Ct. 603, 85 L.Ed. 881].)

 The Constitution (art. XXVI, *supra*) refers to highways "of this state." The codes and preceding statutes seem to use the words and phrases "highway," "public highways in this state," "highway of this state," and "public highway" interchangeably. The Supreme Court uses the phrase "highways of this state" in construing the statutes here in question. We think that this is the correct construction, and that the term "highway," as used in the codes, and particularly Vehicle Code, section 81, refers to those ways and places constructed, maintained, controlled, located and policed by or under the authority of the state or its political subdivisions and agencies, and not to the federal roads in Yosemite National Park, which are constructed, maintained, controlled, located and policed solely by and under the authority of the United States Government. This construction seems to us to be clearly consistent with the purposes of the statutes, both regulatory and fiscal. It also avoids the necessity of construing the same codes as having one meaning for regulatory purposes, i.e., that for these purposes they do not apply to the federal roads, and a different meaning for tax purposes, i.e., that for these purposes they do apply to the use of those roads. (See *Collins* v. *Yosemite Park & Curry Co., supra,* 304 U.S. 518.)

 The parties devote a great deal of space in their briefs to the question as to whether certain words used in Vehicle Code, section 81, apply to the federal roads—are they "publicly maintained," and are they "open to the use of the public?" No cases directly in point have been cited by either side. Appellants rely primarily upon the cases cited at page 450 of this opinion dealing with the power of the state to impose taxes in the park. They are of little assistance, though they do hold that a national park is within the state in which it lies, and is a part thereof, and that the state, under language like that contained in Statutes 1919, chapter 51, page 74, can impose upon and collect from such a concessionaire as respondent, excise or privilege taxes upon various phases of its business, such as the California Motor Vehicle Fuel License Tax Act (Stats. 1923, ch. 267, p. 571, as amended by Stats. 1933, ch. 631, p. 1631); the California Retail Sales Tax Act (Stats. 1933, ch. 1020, p. 2599 as amended); the business activities tax, sales tax, and highway transportation tax of Washington

(Stats. Wash. 1935, ch. 180, p. 706) ; the business and occupations tax of Washington (Stats. Wash. 1933, ch. 191, p. 896) ; the Arkansas unemployment compensation law (Pope's Digest, §§ 8549 ff.) ; the Arkansas corporation income tax (Ark. Acts 1929, No. 118) ; the Montana store license tax law (Mont. Laws 1939, ch. 163) ; and the Wyoming gasoline tax (Wyo. Laws 1935, ch. 72, as amended). They do not deal with a problem of construction similar to ours.

Of course the federal roads are, in a sense, ''publicly maintained'' (*cf. Wood Bros. Const. Co.* v. *Bagley,* 232 Iowa 902 [6 N.W.2d 397] ), but they are maintained exclusively by the United States. We do not find in this phrase, considered with the statutory scheme as a whole, an intent to apply the law to the federal roads. They are also, in a broad sense, ''open to the use of the public.'' But their use is subject to the control and permit of the Secretary of the Interior, a control that he has exercised extensively by requiring a permit and payment of a fee for their use, closing some roads permanently, closing others at certain times of the day, excluding certain types of vehicles entirely, and in many other ways. (36 C.F.R., §§ 1.0, 1.1, 1.18, 1.33(c), 1.36 (a) and (b), 1.37, 1.39, 1.40 (a)(1), 1.41, 13.15, 20.16(b).) Nothing has been cited to us indicating that the secretary could not, if he chose, entirely exclude motor vehicles from the park.

Appellants' other cases* are so remote on their facts from the present problem that we do not discuss them further.

We are satisfied that our construction of the statutes in question is that which is most consistent with the over-all purpose and intent of the Legislature : to enable the state and its cities and counties to regulate, police, build and maintain roads, and to require the persons who use those roads to pay their fair share of the cost. Article XXVI, section 2, of the California Constitution, *supra,* allocates the moneys collected

*City of Long Beach v. Payne, 3 Cal.2d 184 [44 P.2d 305]; Southern California Ry. Co. v. Slauson, 138 Cal. 342 [71 P. 352, 94 Am.St.Rep. 58]; People v. San Francisco & A.R.R. Co., 35 Cal. 606; Menzel Estate Co. v. City of Redding, 178 Cal. 475 [174 P. 48]; Laubscher v. Blake, 7 Cal. App.2d 376 [46 P.2d 836]; Gilfillan v. Shattuck, 142 Cal. 27 [75 P. 646]; Criswell v. Pacific Elec. Ry. Co., 48 Cal.App.2d 819 [120 P.2d 670]; Western Union Tel. Co. v. Hopkins, 160 Cal. 106 [116 P. 557]; Mecchi v. Lyon Van & Storage Co., 38 Cal.App.2d 674 [102 P.2d 422]; Wood Bros. Construction Co. v. Bagley, 232 Iowa 902 [6 N.W.2d 397]; Cohoon v. Roughton, 215 N.C. 116 [1 S.E.2d 362]; People v. Knight, 35 Cal. App.2d 472 [96 P.2d 173]; Blood v. Woods, 95 Cal. 78 [30 P. 129]; Sears v. Tuolumne County, 132 Cal. 167 [64 P. 270]; People v. Davidson, 79 Cal. 166 [21 P. 538].

from motor vehicle and other vehicle registration license fees and from all other tax or license fees imposed by the state upon vehicles, motor vehicles or the use thereof to the Highway Patrol (which has no jurisdiction in the park) for its operations, and to the construction etc. of state streets and highways. Not one cent of those funds has been spent on the federal roads for 30 years. And the act imposing the weight and registration fees at issue here declares its purpose to be to provide a 10-year program "for the development of the State Highway System," which system expressly excludes the federal roads in Yosemite. Moreover, the State Highway Fund is devoted to *state* highways, to highways in *state* parks and to *city* streets. We think that it was not the Legislature's intent to exact fees for the use of roads as to which it has no power or duty of regulation, and no obligation of maintenance. As stated in *In re Bush,* 6 Cal.2d 43, 53 [56 P.2d 511]: "We are satisfied that the purpose of the enactment of the [Motor Vehicle Transportation] License Tax Act of 1933 was to secure a fair return to the state for the use of its public highways. . . ." (*Ingels* v. *Riley, supra,* 5 Cal.2d 154, 163-164. See also *Matter of Application of Schuler,* 167 Cal. 282, 289-290 [139 P. 685, Ann.Cas. 1915C 706]; *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420 [143 P. 700]; *Bacon Service Corporation* v. *Huss,* 199 Cal. 21, 29 [248 P. 235]; *Lord* v. *Henderson,* 105 Cal.App.2d 426, 434, 436 [234 P.2d 197]; *Old Homestead Bakery, Inc.* v. *Marsh,* 75 Cal.App. 247, 253-254 [242 P. 749].)

Appellants claim that, because the vehicles in question have never been reported by respondent to Mariposa County, an entirely separate taxing authority and body, for assessment and ad valorem tax, to which they are subject if they are not subject to the Vehicle License Fee Law, it cannot now assert that they are not subject to the state taxes here involved. This contention can only relate to the Vehicle License Fee Law, and the total fees of that type here involved amount to $4.00. But in any event, the authorities cited (*Pacific Fruit Express Co.* v. *McColgan,* 67 Cal.App.2d 93 [153 P.2d 607]; *T. E. Connolly, Inc.* v. *State,* 72 Cal.App.2d 145 [164 P.2d 60]) do not support appellants' claim.

Appellants neither pleaded nor proved any election on respondent's part. (*Karapetian* v. *Carolan,* 83 Cal.App.2d 344, 346 [188 P.2d 809, 1 A.L.R.2d 1075]; *Carter* v. *Superior Court,* 142 Cal.App.2d 350, 358 [298 P.2d 598].) Nor is there

any showing of injury to appellants by reason of any supposed election. (*Pacific Coast Cheese, Inc.* v. *Security-First Nat. Bank,* 45 Cal.2d 75, 80 [286 P.2d 353].) Nor did respondent have an election. It paid under the claimed compulsion of law. (*Shumm* v. *Berg,* 37 Cal.2d 174, 189 [231 P.2d 39, 21 A.L.R.2d 1051] ; *Atchison, etc. Ry. Co.* v. *Superior Court,* 12 Cal.2d 549, 555 [86 P.2d 85] ; *De Hart* v. *Allen,* 49 Cal.App.2d 639, 646 [122 P.2d 273] ; *Pancoast Hotel Co.,* 2 Tax Court 362, 370.) We think that appellant's argument is fully answered in *Northrop Aircraft* v. *California Emp. etc. Com.,* 32 Cal.2d 872, 879-881 [198 P.2d 898]. And see *McKenzie* v. *Department of Motor Vehicles,* 70 Cal.App.2d 1, 5 [160 P.2d 167]. Appellants appear, and we think properly, to have abandoned this point in their reply brief.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 23, 1960.

